(No. 33427.—

THE PEOPLE *ex rel.* John B. Brenza, County Collector, Appellee, *vs.* DANIEL GEBBIE, Appellant.

*Opinion filed May 20, 1955.*

566

HOLT & KEARNEY, and ADAMS, WILLIAMSON & TURNEY, both of Chicago, (MARSHALL V. KEARNEY, ROBERT McCORMICK ADAMS, BURKE WILLIAMSON, and JACK A. WILLIAMSON, of counsel,) for appellant.

JOHN GUTKNECHT, State's Attorney, and RUSSELL W. ROOT, both of Chicago, (GORDON B. NASH, EDWARD E. PLUSDRAK, and LAWRENCE J. FENLON, of counsel,) for appellee.

Per CURIAM: Daniel Gebbie, a taxpayer, here appeals from a judgment of the county court of Cook County overruling seven objections to 1949 taxes of the Sanitary District of Chicago. Five of said objections relate to taxes levied for the corporate fund of the district and the balance to the taxes levied for bond and interest requirements.

The first of the objections to the corporate fund levy is a constitutional attack upon the provisions of section 5.3 of the Sanitary District Act of 1889, (Ill. Rev. Stat. 1949, chap. 42, par. 324m,) which section was first enacted in 1943, (Laws of 1943, pp. 601-602,) and which designed the

method the district has used to appropriate for and levy its corporate taxes from 1944 to the present. The pertinent portion of the section is as follows:

"In order to require sanitary districts, organized under this Act, to conduct their fiscal affairs and finance their annual corporate expenditures on an actual cash basis for each budget year, such sanitary districts may appropriate for corporate purposes a sum not in excess of 75% of the tax levied for corporate purposes for the budget year, such sum being equivalent of the amount of money that may be realized from the sale of warrants issued in anticipation of the tax levied for corporate purposes for the budget year, pursuant to the provisions of the statute authorizing the issuance and sale of tax anticipation warrants.

"The fact that the tax levied for corporate purposes for any budget year is in excess of the amount appropriated from such levy for corporate purposes for that year, as above limited and defined, shall not affect the validity of the ordinance making such appropriation or the validity of the ordinance levying such tax.

"Money received or estimated to be received from the tax levied for corporate purposes for any budget year in excess of the amount required for the payment of warrants and interest thereon issued in anticipation of such tax levy, shall become a part of the corporate fund for the budget year in which said excess amount is estimated to be received by the sanitary district and the tax authorized to be levied for corporate purposes for such subsequent budget year shall be reduced by that amount."

Section 12 of the same act authorizes corporate pegged levies for the district in amounts which have fluctuated with district needs, (See: Ill. Rev. Stats. 1943, 1945, 1947 and 1949, chap. 42, par. 332,) and, in each year since the system prescribed by section 5.3 came into full operation, the district has reduced the pegged levy by the money subsequently received in excess of the amounts required to

pay principal and interest of tax anticipation warrants. For the years 1946 to 1954, inclusive, such reductions have totalled $14,550,000.

Translating the 1949 corporate taxes into the terms of the statutes, the record shows that the authorized corporate pegged levy for that year was $10,000,000, which, by reason of collections from prior years' tax levies in excess of the amounts required to pay principal and interest on tax warrants, was reduced in the sum of $1,300,000 by the district, which then levied only $8,700,000. As provided by section 5.3, the district appropriated $6,525,000, or 75 per cent of the $8,700,000 levied for corporate functions for the budget year. The objector agrees that to the appropriation of $6,525,000 there may be added an allowance of 10 per cent, or $652,500, for loss and cost, (and the district's failure to appropriate for loss and cost is the subject of another objection,) making a total appropriation of $7,177,500. Therefore, the appellant-objector here challenges that part of the $8,700,000 levied for corporate purposes which exceeds $7,177,500, or $1,522,500. In other words, ignoring the controversy over the loss and cost item for the moment, the appellant objects to the amount levied in excess of that appropriated and challenges the constitutionality of the statutory provisions which permit such a method. The district, of course, defends the constitutionality of the statute and, at the same time, advances the argument that the actual amount involved in the objection should necessarily be the claimed amount of $1,552,500, less $1,300,000, the amount of benefits received by reduction of the pegged levy.

In *Mathews* v. *City of Chicago*, 342 Ill. 120, there is found a discussion of the various methods, born of emergency and sound business needs, which have been employed in this jurisdiction to provide funds during the period when the collection of taxes is insufficient to meet the current expenses of municipalities. One method, based upon

the principle that it is not necessary for taxing authorities to wait until money is actually needed for paying outstanding obligations before taxes may be levied, has been to permit the authorities to estimate in advance, as nearly as they can, the amount of money that should be raised to meet obligations when they become due, and to thus permit a treasury balance sufficient at all times to meet all current claims upon it. Another method of bridging the gap between levy and collection of taxes, first established in 1879, (Laws of 1879, p. 78,) is the issue of tax anticipation warrants to the extent of 75 per cent of the total amount of the tax levy. Still another method is the "working cash fund" plan, which contemplates the creation, by sale of bonds, direct tax levy, or both, of a revolving fund from which money is transferred to particular corporate funds as needed and later returned to the "working cash fund" when the particular corporate fund is repleted by the collection of taxes. The latter plan, which withstood constitutional attack in the *Mathews case,* permits subsequent taxes to be levied to retire the bonds by which the fund was established.

What we are confronted with in the present case is still another method designed by the legislature to achieve the purpose of permitting the district to meet its obligations and expenses as they arise. The need and desirability of accomplishing such a purpose is not questioned nor can there be any doubt as to the vital nature and continuing need of the district's functions. The district urges that the method is no different in principle from the "working cash fund" plan and, on the authority of the *Mathews case,* where identical objections were made, is not violative of the constitution. Appellant, who also relies upon the *Mathews case,* contends first, that the levy in excess of the amount appropriated for produces a tax which is not "needful" within the meaning of section 1 of article IX of our constitution, second, that the tax is not for a corporate pur-

pose within the constitutional mandate of section 9 of article IX, and, third, that the tax being neither needful, nor for a corporate purpose, deprives him of his property without due process of law. See: *Mathews* v. *City of Chicago,* 342 Ill. 120, 135.

We find it difficult to reconcile appellant's argument that the disputed tax is not for a corporate purpose with the express language of the statute that "money received or estimated to be received from the tax levied for corporate purposes for any budget year in excess of the amount required for the payment of warrants and interest thereon issued in anticipation of such tax levy, *shall become a part of the corporate fund* for the budget year in which said excess amount is estimated to be received by the sanitary district *and the tax authorized to be levied for corporate purposes for such subsequent budget year shall be reduced by that amount.*" (Emphasis supplied.) Appellant appears to take the position that the disputed tax is not for a corporate purpose and is thus a needless tax which serves only to enrich the district's treasury because it is not levied for specifically appropriated purposes. Such a result does not obtain, for, as pointed out in the *Mathews case* (pp. 137-138,) there is no constitutional requirement that taxes levied by municipalities such as the district in this case shall state the specific purposes for which the levy is made. "Such requirements are found only in the statute, and as they are established by statute they may be modified by the legislature." Thus we think it apparent here that when the legislature directed that the money received from the tax levy in excess of the amounts needed to pay warrants "shall become a part of the corporate fund" and used to reduce the tax levy for corporate purposes of the subsequent year, it limited the use of the tax to a corporate purpose, within the meaning of section 9 of article IX of the constitution. In principle the plan is no different from the "working cash fund" method where the funds realized

from the taxes levied to create the fund are not, at the time, earmarked for any particular or specific corporate use.

Nor do we find that the system provided for the district offends the mandate of section 1 of article IX which requires the legislature to provide such revenues as may be "needful." In relation to this provision, it has been held that the amount of taxes and rate of taxation are exclusively for the legislature, subject only to constitutional limitations, and that the exercise of its discretion cannot be controlled by the court except to prevent a clear abuse thereof. (*People ex rel. Campe* v. *Board of Review,* 290 Ill. 467; *People ex rel. Luers* v. *Chicago and Alton Railroad Co.* 324 Ill. 179; *People ex rel. Hartman* v. *Terminal Railroad Ass'n,* 375 Ill. 186.) As pointed out in the *Mathews case,* and as previously discussed, the establishment of plans or the fixing of rates, as a means whereby municipalities may be able to meet their ordinary expenses as they come due, is a question of sound business judgment and a reasonable exercise of the legislative authority. This is the fundamental concept of the method of taxation under attack in this case and, in the absence of any showing that it has resulted in a needless enrichment of the treasury or that it fails in its purpose of enabling the district to meet its obligations as they arise, we are committed to the principle that a tax of such nature does not offend the constitutional mandate for "needful" taxes.

Appellant, however, insists that the method here provided by the legislature can never result in putting the district on an "actual cash basis" and therefore is to be distinguished from the "working cash fund" plan. Section 5.2 of the Sanitary District Act of 1889, (Ill. Rev. Stat. 1949, chap. 42, par. 324*l,*) which is composed of definitions, defines "cash basis" in this manner: " 'Cash basis' shall mean that system of accounting wherein revenues are accounted for when received in cash and expenditures are accounted for when paid." · Pointing to this definition and

to the fact that the district's system will be perpetually geared to and dependent upon the sale of tax anticipation warrants totalling 75 per cent of the amount of the tax levied each year, appellant urges that it is clear that the district's appropriations are not to be financed through "revenue accounted for when received in cash" but through interest bearing warrants sold in anticipation of the tax levied for corporate purposes for the budget year. He reasons thus that the tax is not for a corporate purpose and serves only to enrich the district's treasury. We find no justification or need for narrowing the legislative purpose to its definition of a "cash basis" system of accounting. Section 5.3 of the act specifically states that its purpose is to require the district to conduct its fiscal affairs and to finance its annual corporate expeditures on an "actual cash basis" for each budget year and the practical operation of the system has been to provide the district with funds by which they may meet their obligations in cash as they arise. This, as has been pointed out, is within the discretion of the legislature to permit and, inasmuch as all funds realized are applied to corporate purposes and are not permitted to accumulate or lie idly in the district treasury, the constitutional requirements for the tax are met.

Insofar as we are able to interpret and foresee the operation of the district's method of taxation, it is to be conceded, as appellant contends, that the issue and sale of tax warrants will not be eliminated, an eventuality looked upon with favor by this court when considering the "working cash fund" plan in the *Mathews case*. Such a feature, however, while desirable from the standpoint of tax economy, does not detract from the corporate purpose of the disputed tax nor will the continued use of warrants produce an unnecessary accumulation of funds in the district's treasury, for the clear direction of section 5.3 is that moneys received in excess of the amounts required for

payment of warrants and interest shall be used to reduce the tax levied for corporate purposes for subsequent years. The situation is not the same as the case of a working cash fund where the continued use of tax anticipation warrants, once the fund was in complete operation, would have created the danger of an accumulation of idle money in the working cash fund; in this case the legislature has expressly provided against such an accumulation. It is to be noted also that even in the *Mathews case,* the court recognized that tax warrants would have to be issued in conjunction with the "working cash fund" plan until the fund became fully operative, yet found no constitutional barrier to the coexistence of the two methods. Nothing in the present case, where the district is permitted both to issue warrants and to levy a tax in an amount that will permit it to meet its obligations as they arise, suggests a different result. In reality, it would appear that appellant's arguments relative to the use of tax warrants are directed to the practicality of the method rather than its constitutionality. In view of our finding that the method provided for does not transcend constitutional barriers, such arguments would more properly be directed to the legislature, whose wisdom in selecting the method it did, cannot, under the circumstances presented, be questioned or controlled by this court.

For the reasons stated, we conclude that the county court properly overruled the constitutional objections to the district's corporate fund levy.

Facts pertinent to appellant's second objection disclose that the original corporate fund levy for 1949, in the amount of $8,700,000, the figure arrived at after reducing the pegged levy of $10,000,000, embraced only appropriations to finance the corporate operations of the district for a period of eight months, a fact so provided in the original appropriation ordinance. By two amendments, approved May 27, 1949, the legislature increased to $14,500,000 the

maximum pegged levy of the district for 1949, and authorized a supplemental tax levy for that year in the amount of $4,500,000. (Laws of 1949, pp. 744 and 785.) Pursuant to the previously discussed method of appropriation and levy provided for in section 5.3, the district appropriated for 75 per cent, or $3,375,000 of the additional tax authorized, but levied for the full amount of $4,500,000. Appellant objects to the sum of $1,250,000 by which the supplemental levy exceeds the supplemental appropriation, contending: first, that it is void under the constitution as being a tax in excess of corporate needs, and, second, that it is void because it does not conform to the amendments which permitted the supplemental levy.

The constitutional objection to the supplemental tax having been resolved against appellant in our consideration of an identical objection to the original tax of 1949, we·shall look only to the objection that the method of appropriation and levy employed for the supplemental tax does not conform to the provisions of the legislative amendments by which it was authorized. The first of the legislative enactments referred to is an amendment to section 5.7 of the Sanitary District Act, empowering the district to "pass a supplemental appropriation ordinance for 1949" by which the district "shall appropriate such additional sums of money as may be necessary to defray necessary additional corporate expenses * * *." (Laws of 1949, p. 744; Ill. Rev. Stat. 1949, chap. 42, par. 324q.) The second of the amendments involved authorizes the levy and collection of an additional tax for 1949 in these terms:

"Sec. 12. The board of trustees annually may levy taxes for corporate purposes * * * for the year 1949 not to exceed fourteen million five hundred thousand dollars ($14,500,000) * * *.

"Provided further, that to meet expenditures necessary to continue proper operation of sewage treatment works in compliance with the mandate of the Supreme Court of the

United States and to pay other corporate expenses not provided for in the annual appropriation and tax levy ordinance heretofore adopted for the year 1949, the board of trustees may levy taxes for the year 1949, in addition to taxes heretofore levied for corporate purposes for the year 1949, the aggregate amount of which shall not exceed fourteen million five hundred thousand dollars ($14,500,000) which tax shall be retroactive in its operation.

"In order to make fully effective the amount of taxes herein authorized for the year 1949, the board of trustees is authorized to levy any supplemental or additional tax for the year 1949, the amount of which when added to the aggregate amount theretofore levied for the year 1949 for corporate purposes, exclusive of the amount levied for the payment of bonded indebtedness and the interest on bonded indebtedness and exclusive of the tax levied for employees' annuity and benefit fund purposes, shall not exceed the sum of fourteen million five hundred thousand dollars ($14,500,000). Said additional tax for the year 1949 may be appropriated at any time or times during the year 1949 notwithstanding the annual appropriation ordinance and the annual tax levy ordinance of such district for the year 1949 may have been passed prior to the date when this Act becomes effective.

"Provided, however, that the appropriation and levy of such additional tax may be made without complying with the provisions of Sec. 5.1 to 5.13, inclusive, of 'An Act to create sanitary districts and to remove obstructions in the Des Plaines and Illinois Rivers', approved May 29, 1889, as amended. * * *." Laws of 1949, p. 785; Ill. Rev. Stat. 1949, chap. 42, par. 332.

Looking to the amendment last quoted, appellant contends that when the legislature stated its desire of making the amount of additional tax authorized "fully effective" and followed with the provisions that "said additional taxes for the year 1949 may be appropriated at any time or times

during the year 1949," and that "the appropriation and levy of such additional tax may be made without complying with the provisions of Sec. 5.1 and Sec. 5.13 inclusive," it manifested an intention to authorize a supplemental appropriation not exceeding $4,500,000, and a levy in the amount of such appropriation. On this basis it is urged that because only $3,375,000 of the additional tax was appropriated, the levy was limited to that amount.

For the district it is urged that the legislative intent to be gathered from the language of the amendments, from related statutes, and from a consideration of the evil to be remedied, is that the supplemental tax was to be appropriated for and levied in the same manner as the original tax for 1949, namely, appropriation of 75 per cent and levy for the full additional amount authorized. To support its position in the court below, the district was permitted to introduce in evidence, over objection, a letter of its president addressed to the Governor and members of the Sixty-sixth General Assembly and testimony of officers of the district and the Civic Federation, both of which organizations were instrumental in initiating the 1949 amendments. The tenor of such evidence was that the supplemental tax need was calculated in the light of the "actual cash basis" method provided for in section 5.3. Appellant contends that it was error to receive such evidence. In the early case of *Belleville and Illinoistown Railroad Co.* v. *Gregory,* 15 Ill. 20, this court adopted the rule that the meaning or effect of a statute cannot be determined by considering the statements and opinions of persons interested in its passage. This rule was reiterated in *People ex rel. Dwight* v. *Chicago Railways Co.* 270 Ill. 87, at page 106, where it is said: "When the courts shall be driven to the lobbies of the legislature to learn the sentiments of the members, for the purpose of contruing the laws, a new rule of construction will have been adopted." Of like effect is *Eddy* v. *Morgan,* 216 Ill. 437, pp. 448-449.

When, as here, the proof of legislative intent is sought to be derived from what those interested in the passage of the bill told the legislature, we think the rule of the cited cases must apply, and hold that it was error for the county court to consider such evidence.

Although the district may not avail itself of evidence in the nature of that just discussed, its contention is not without support in law and in fact. We have often held that a statute itself affords the best means of its exposition, and if the legislative intent can be ascertained from its provisions, that intent will prevail without resorting to other aids for construction. (*People ex rel. Nelson* v. *Olympic Hotel Building Corp.* 405 Ill. 440, 444.) Equally familiar is the principle that amendments are to be construed together with the original acts to which they relate as constituting one law, and are also to be considered together with other statutes upon the same subject as a part of a coherent system of legislation. (*People ex rel. Brenza* v. *Fleetwood,* 413 Ill. 530, 547-8.) When the amendments here are considered in their entirety, as contrasted with the isolated phrases from which the appellant draws the legislative intent, we are of the opinion that the application of the stated principles commands the result that the legislature fully intended the supplemental tax to be appropriated for and levied in the same manner as the original tax for 1949.

Looking first to the express language of the legislature, we find that the controlling statute, before amendment, provided that the district could levy a tax "for the year 1948 and each year thereafter not to exceed ten million dollars." (Ill. Rev. Stat. 1947, chap. 42, par. 332.) It was pursuant to this provision that the original 1949 levy of $8,700,000 was made. Thereafter the section was changed by one of the amendments here in dispute to authorize the levy of a tax "for the year 1949 not to exceed fourteen million five hundred thousand dollars."

(Ill. Rev. Stat. 1949, chap. 42, par. 332.) Cognizant of the fact the district had already adopted the original levy of $8,700,000, the legislature went on to provide that "the board of trustees may levy taxes for the year 1949, in addition to taxes heretofore levied for corporate purposes for the year 1949, the aggregate amount of which shall not exceed fourteen million five hundred thousand dollars." There can be little dispute that these segments of the amendatory language do nothing more than to increase the amount of taxes authorized for the year 1949. Additionally, they admit to no construction that the legislature intended to change the method of appropriating against the levy or that it was intended to render inoperative the exculpatory provision of section 5.3 of the same act that the district's levies should not be rendered invalid because they exceeded the amounts appropriated.

There follows in the amendment, however, this language: "In order to make fully effective the amount of taxes herein authorized for the year 1949, the board of trustees is authorized to levy any supplemental or additional tax for the year 1949, the amount of which when added to the aggregate amount theretofore levied * * * shall not exceed the sum of fourteen million five hundred thousand dollars ($14,500,000). Said additional tax for the year 1949 may be appropriated at any time or times during the year 1949 * * *." Appellant contends that the expressed intent to make the amount of tax authorized "fully effective" and the authorization to appropriate the additional tax at "any time or times during the year 1949" negate a construction that a supplemental appropriation was ever to be less than a supplemental levy. Stated differently, it is appellant's argument that the legislature intended that the district could appropriate for the full $4,500,000 if corporate needs therefor had been shown. We do not agree that this is so. A reading of the entire sentence in which the words "fully effective" appear show

that the legislature is referring to the aggregate amount of taxes for the year 1949, the bulk of which had already been appropriated for and levied in the manner provided for in section 5.3. We do not, therefore, read into the words "fully effective" any legislative intent to cause the supplemental tax to be appropriated for to a greater extent, or in a manner different, than the originally authorized portion of the aggregate amount. Nor does the phrase authorizing the appropriation of the additional tax at any time or times during 1949 alter such result, for it is manifestly only a provision delineating the period during which additional appropriations and levies could be made. To interpret such phrase as showing an intention that the amount of appropriation should control the levy would do violence to the plain meaning of the words.

The amendatory provision relied upon most by appellant is the concluding paragraph of section 12 which ordains, in part, "that the appropriation and levy of such additional tax may be made without complying with the provisions of Sec. 5.1 to 5.13, inclusive," of the Sanitary District Act of 1889. Inasmuch as section 5.3 contains the provision requiring the district's appropriation to be limited to 75 per cent of the levy, appellant reasons that the proviso must have been included in the amendment for the purpose of allowing appropriation of the supplemental tax without regard to such limitation. We do not construe the language employed as indicating such a narrow purpose. Sections 5.1 to 5.13, inclusive, of the act referred to, contain many mandatory and regulatory provisions relating to fixed dates and fixed time schedules with respect to the preparation, contents and presentation of the district's annual financial plans, budgets, ordinances, public inspection, public hearing and the like. Considering such provisions generally, and section 5.3 in particular, we think it obvious that the district had to be released from their regulatory provisions to make any supplemental levy at

all. Had it been intended to require that the amount of supplemental levy should be controlled by the amount of supplemental appropriation, the legislature surely would not suppose it would accomplish that result by excusing "compliance" with section 5.3. Both before and after the amendment in question, section 5.3 provided that "The fact that the tax levied for corporate purposes for any budget year is in excess of the amount appropriated from such levy * * * shall not affect the validity of the ordinance making such appropriation or the validity of the ordinance levying such tax." To say that the supplemental appropriation and levy could be made without complying with the provisions of sections 5.1 to 5.13, is not to say that the above-quoted provision of section 5.3 should become inoperative. It is not a provision which involves or requires compliance. We do not, therefore, interpret the general language of the proviso appellant relies upon as rendering nugatory the express and unamended exculpatory provision of section 5.3.

Apart from the fact that we find no basis for appellant's contention in the express language of the amendments, it is also to be borne in mind that the amendments are to be construed together with the original act to which they relate, and also together with statutes on the same subject, as part of a coherent system of legislation. When the amendments here are contrasted with the provisions of the original act, their manifest purpose was only to increase the amount of tax the district could levy in 1949. When construed with related acts, particularly those provisions which require the district to operate on a cash basis, we find no basis for holding that the legislature, in authorizing the supplemental tax, intended to depart from the coherent plan it had adopted to permit operation on a cash basis. Measured in terms of the evil to be remedied, it is manifest that the financial problems which would beset the district in the last four months of operation in 1949, and

which the supplemental tax was designed to meet, would be no different from those of the first eight months which necessitated the method of appropriation and levy employed for the original tax. It is our judgment that the county court properly overruled this objection.

The third objection advanced by appellant is that the original 1949 levy of $8,700,000 is invalid to the extent of $870,000, which figure represents 10 per cent levied for loss and cost. The record indicates the district did levy for loss and cost, as it is required to do by section 12 of the Sanitary District Act (Ill. Rev. Stat. 1949, chap. 42, par. 332,) in the amount stated. It is equally clear that the district did not appropriate for such item, despite the direction of section 5.3, the budget provisions of the act, that its appropriations include an amount sufficient to cover loss and cost. Appellant argues that if the district had followed the mandate of the statute by appropriating for loss and cost, appropriations made for actual expenditures during 1949 would necessarily have been reduced, to the taxpayer's benefit, by $870,000. In other words, it is his contention that there has been an excessive appropriation for expenditures arising from the failure to appropriate for loss and cost, thus causing an illegal levy in that amount. In justification of its failure to appropriate for such item, the district advances the argument that loss and cost is not an item of expenditure and that an appropriation for it, under the method which requires the district to operate its corporate functions on a cash basis as to receipts and expenditures, would be a needless and impossible action.

While the district's authority to levy taxes in excess of amounts appropriated for in a budget year may be some basis for questioning the necessity of either appropriation or levy for loss and cost, the district has advanced neither construction nor authority which demonstrates to our satisfaction that the method by which it is permitted to conduct

its finances renders an appropriation for loss and cost impossible. The fact remains that the legislature has specifically directed that the district shall appropriate for such item and this court is not at liberty to ignore its direction. If the district finds that it cannot do so without working hardship on its financial system, the remedy is with the legislature, not the courts. We agree with appellant that the district's failure to appropriate for loss and cost, while at the same time it levied 10 per cent for such item, resulted in an illegal levy of $870,000, and hold that the county court erred in overruling the objection.

Facts relevant to the next objection disclose that the "Estimated Balance Sheet—Corporate Fund, January 1, 1949," found in the district's 1949 budget, showed total assets of $351,100,140.60 as of that date. However, of this amount only $9,424,995.63 were marked as current assets available for appropriation. Under the heading of other assets, totalling approximately $340,000,000, there was contained an item of "Inventories—Materials and Parts . . . . $875,000.00" which was specifically designated as not available for appropriation. For the year 1949, the district appropriated and levied for "Materials and Parts" in the amount of $743,000, which the appellant insists was illegal because of the district's failure to appropriate any part of the inventory of $875,000 against 1949 appropriations for the same items. In other words, it is appellant's contention that the inventories of materials and parts are an asset of the district available for appropriation against expenditures for such items.

Appellant admits that, under section 5.3 of the Sanitary District Act, (Ill. Rev. Stat. 1949, chap. 42, par. 324m,) the amount of assets available for appropriation is a matter lying in the sound discretion of the district's board of trustees, but, with little support in the record except cold figures which reflect a yearly increase in the size of such inventories since 1940, adopts the position

that the district has now stock-piled such items beyond a reasonable requirement merely for the purpose of hoarding. Under such circumstances, it is urged that there has been an abuse of discretion and the inventories should be considered available to meet current operating expenses. For its part, the district advances the explanation that the "materials and parts" in question are only those needed in the day-to-day operation of its vast and ever expanding system and argues that any effort on its part to reappropriate for existing inventories already appropriated and paid for under its cash basis system, would itself be illegal.

It is a principle well established by decisions of this court, that matters of estimating receipts, of determining assets available for appropriation, and of estimating expenditures, are questions which are left to the sound discretion of taxing authorities and will not be reviewed by courts except for a clear abuse of discretion. (*People ex rel. Schlaeger* v. *Siebel,* 388 Ill. 98, at 106, 113; *People ex rel. DeRosa.* v. *Chicago and North Western Railway Co.* 391 Ill. 347, at 352.) The most recent application of the rule has been in *People ex rel. Brenza* v. *Chromium Corp.* 3 Ill. 2d 271, where it is pointed out that questions concerning the availability of assets for appropriation must be approached with the realization that taxation is a practical business. The objector in the present case contends that the rule is inapplicable here, saying that the district's admission that such parts and materials are on hand in the various plants of the district, and are essential in day-by-day operations, concedes their actual availability as assets. We, however, do not interpret the circumstances as forcing a conclusion that such assets must be classified as being available for appropriation. There is nothing in the record to show that the district has accumulated parts and materials in excess of the amounts necessary to meet its daily demands or that its inventories are greater than is necessary to insure the continued operation of its vital functions

in the event of temporary emergencies occasioned by material shortages or failure to realize tax moneys. Sound business and the public interest would seem to dictate that the district maintain inventories sufficient to meet temporary emergencies and it is likewise reasonable to assume that average consumptions and replacements will create a need to replenish such inventories from year to year. If, in the absence of any showing of needless or excessive accumulation in the inventories, we were to hold them as assets available for appropriation each year against current expenditures for the same items, it follows that the stocks required by sound business practices could not be replaced and would soon cease to exist. We find therefore, from the circumstances presented by the record, that the district did not abuse its discretion in concluding that such inventories were not assets available for appropriation and hold that appellant's objection was properly overruled.

The final objection to the corporate levy is that items totalling $206,310 were not properly itemized. The items in question were specifically validated by the legislature in 1951, but it is appellant's contention that the validating act violates section 13 of article IV of the Illinois constitution in that it embraces a subject not mentioned in its title.

The title and substance of the validating act are as follows:

"An Act to validate certain appropriation ordinances and certain tax levy ordinances heretofore adopted by the Board of Trustees of any sanitary district organized and existing under 'An Act to create sanitary districts and to remove obstructions in the Des Plaines and Illinois Rivers,' approved May 29, 1889, as amended.

"Be it enacted by the People of the State of Illinois, represented in the General Assembly:

"Sec. 1. Whenever, during the years 1947, 1948, 1949, 1950 and 1951, the Board of Trustees of any sanitary district organized and existing under 'An Act to create sani-

tary districts and to remove obstructions in the Des Plaines and Illinois Rivers,' approved May 29, 1889, as amended, heretofore has adopted the budget and annual appropriation ordinance for such district for each of said fiscal years and thereafter at the same meeting has adopted an ordinance levying taxes for each fiscal year and subsequently such appropriation ordinance and tax levy ordinance for each such fiscal year were published in a newspaper having a general circulation within said district as such annual appropriation ordinance, then all appropriations so made or purporting to be made thereby for each year, and each such annual tax levy ordinance and all taxes so levied or purporting to be levied thereby, not prohibited by the constitution of this State and not in excess of any applicable tax rate or statutory limitations are hereby declared to be legal and valid and the amounts for which appropriations and levies were made therein and the several purposes named therein as the objects of said appropriations and levies are hereby legalized and validated, notwithstanding that any objections thereto have been or could be made to any such appropriation or tax levy on the ground that there was appropriated or levied a single sum for more than one purpose or that such appropriation and levy was not sufficiently itemized and notwithstanding any other legal objections on the ground aforesaid which, except for the passage of this Act, would have been or can be made to any such appropriation or tax levy." Approved June 25, 1951. Ill. Rev. Stat. 1951, chap. 42, par. 350c.

Briefly summarized, it is appellant's argument that the body of the act purports to validate each of the essential statutory parts of the district's taxing procedure: (1) the budget and (2) the appropriation and tax levy ordinances, but fails to refer to the budget in its title. It is urged that a legislator or member of the public looking at the title would not know that the budget, which also contained the

allegedly improper itemizations, was also the subject of the legislative action.

In construing the constitutional requirement of singleness of subject, the tendency has been to adopt a liberal rather than a strict construction, to the end that the beneficial purposes for which the provision was adopted will not be defeated. (*Lasdon* v. *Hallihan*, 377 Ill. 187; Cooley's Const. Lim., 7th ed., p. 209.) In this respect we have held that the term "subject" is comprehensive in its scope and that an act may include all matters germane to its general subject, including the means necessary or appropriate to the accomplishment of the legislative purpose. (*People ex rel. Gutknecht* v. *City of Chicago*, 414 Ill. 600.) What the constitutional requirement seeks to prohibit is the inclusion of "discordant provisions that by no fair intendment can be considered as having any legitimate relation to each other." (*People ex rel. City of Chicago* v. *Board of County Comrs.* 355 Ill. 244, 247.) In the light of. these interpretations, we have held that to render a provision in the body of a statute void as not .embraced in its title, the provision must be one which is incongruous, or which has no proper connection with the title. (*Department of Public Works and Buildings* v. *Chicago Title and Trust Co.* 408 Ill. 41.) Therefore, the constitution is obeyed if all the provisions of the act relate to one subject indicated in the title and are parts of it, or incident to it, or reasonably connected with it, or in some reasonable sense auxiliary to the object in view. *People* v. *Commercial Life Ins. Co.* 247 Ill. 92.

Even assuming, as appellant contends, that the validating act has the effect of legalizing a defective budget without expressing such matter in its title, it is apparent, when the principles of the cited cases are applied, that the provisions so construed do not have the effect of rendering the title constitutionally deficient. The purpose of the act,

as expressed in its title and apparent from its terms, is to validate certain appropriation and levy ordinances already adopted by the district. Recourse to the Sanitary District Act shows that section 5.7 (Ill. Rev. Stat. 1949, chap. 42, par. 324q,) provides in part: "The appropriation ordinance and tax levy ordinance shall be parts of the budget and shall be adopted as a part thereof by single action of the board of trustees." With the interrelation between the budget and the ordinances thus established, it is manifest that any provisions of the validating act which may be construed as relating to the budget upon which the ordinances were based cannot be said to be discordant with or unrelated to the subject of validating the ordinances. The matters relating to the budget must, therefore, be held to be reasonably adapted to accomplish the main purpose of the act, and, being auxiliary to that purpose, are therefore within the title of the act. This objection was properly overruled.

The record discloses that the district's 1949 bond and interest tax levy was for $15,229,815.93, which included, as authorized by statute, an amount of $1,522,981.59, or 11.11 per cent of the bond and interest requirements, to cover "losses in collection of taxes, the cost of collecting taxes, abatements in the amount of such taxes as extended on the collector's books and the amount of such taxes, collection of which will be deferred." The appellant contends the allowance is excessive to the extent that it exceeds 10 per cent, or $152,298.16. In making this objection, appellant acknowledges: (1) the statutory duty of the district to levy taxes in order to produce the net amount required by the levies (See: Ill. Rev. Stat. 1949, chap. 42, par. 332); (2) the provisions of section 12 of article IX of the Illinois constitution making it the duty of the district to provide for the payment of its bonded indebtedness and interest as the same fall due (See: *People ex rel. Gill* v. *110 South Dearborn Street Corp.* 363 Ill. 286, at 290);

and (3) that the taxing authority is permitted to exercise business judgment and exercise sound discretion in determining the amount to be levied for loss and cost. He contends, however, that because the district must have been aware of the excellent record of collections being received on 1948 taxes and of the presence, in sinking funds for bonds and interest redemption, of cash and investments which exceeded by some $2,500,000 the total liabilities for bonds and interest due on and prior to January 1, 1950, it had no reason to believe that for the 1949 levy it would be necessary to add 11.11 per cent to its requirements in order to receive its net levy. Appellant submits that 10 per cent would have been sufficient.

The decisions of this court have long been in accord in holding that no inflexible rule for determining the percentage to be allowed for loss and cost can be laid down and that the amount to be allowed rests in the discretion of the taxing authorities. The same decisions establish that the determination of whether there has been an abuse of discretion depends largely upon the facts of each case. See: *People ex rel. Gill* v. *Schweitzer,* 366 Ill. 568, at 575, and cases there cited.

In the present case, the facts show that the average first year's collection of taxes levied for the years 1943 to 1947 inclusive, was 82.58 per cent, while in the year 1948 the first year's collection was 88.4 per cent of the total 1948 extension. The district asserts that it had before it only the five-year average when the 1949 bond and interest levy was made and that the amount of loss and cost fixed for the latter year was, in the exercise of sound business judgment, based upon the average experience. Appellant, for his part, argues that the district knew, or should have known, of the higher collection percentage in 1948 and should have been guided by that figure alone in estimating loss and cost for the year 1949. Knowing, from the many tax decisions in this court, of the uncertainties which attend

year-to-year tax collections because of their high sensitivity to ever-fluctuating economic and political conditions, and recognizing the district's constitutional duty to fortify itself against the day when its bonded indebtedness will accrue in the future, it is our opinion that sound business judgment demands that the district employ an average of first year collections in estimating loss and cost. We think this is true even though the bond and interest levy is an accelerated levy which need not be received in its entirety the year it goes into collection, for loss and cost will always be present and to hold that the district should be guided solely by the high collection experience of one year or by the low experience of another would be to indulge in an unsound practice that would work to the disadvantage of taxpayer and taxing authority alike. The district contends it had before it only the five-year collection experience previously described when the 1949 bond and interest levy was made and that for this reason the 1948 collection experience was not used in any manner in determining the 1949 percentage for loss and cost. In the absence of any showing by appellant that the district had, or should have had, the 1948 figures before it when the 1949 levy was made, we are of the opinion that the district did not abuse its discretion in fixing the percentage of loss and cost, either as to the amount arrived at or as to the formula employed.

The final objection made by appellant is that the district's 1949 levy for bond and interest sinking funds, together with amounts for loss and cost, was excessive in the amount of $903,455.65. The basis for such a claim is section 5 of the act authorizing sanitary districts to issue refunding bonds, (Ill. Rev. Stat. 1949, chap. 42, par. 298.5,) which contains the following provision: "Whenever any refunding bonds are purchased and cancelled, as provided in section 4 of this Act, the taxes thereafter to be extended for payment of the principal of and the interest on the

remainder of the issue shall be reduced in an amount equal to the principal of and the interest that would have thereafter accrued upon the refunding bonds so cancelled. A resolution shall be adopted by the corporate authorities of the sanitary district finding these facts. A certified copy of this resolution shall be filed with the county clerk specified in section 2 of this Act. Whereupon the county clerk shall reduce and extend such tax levies in accordance therewith."

Involved here are sinking funds for Series E, F, G and H refunding bonds, respectively. In each instance the district adopted ordinances authorizing the issue of the series which were to be retired over a period of twenty years. For the purpose of retiring principal and interest, each ordinance provided for a yearly levy for both principal and interest which, except for variations in the first and nineteenth years, was the same each year. Typical of this is the ordinance for the Series E bonds, which provides for a yearly levy of $60,000 for interest and $160,000 for principal to retire $3,000,000 in bonds. It is admitted that the district has abated the levy for interest each year as bonds have been retired but levies for principal have gone on each year as scheduled in the ordinances. In this respect there is no showing in this record that such levies have been in excess of the funds' needs to meet outstanding obligations. It does appear, however, that each fund was, when the 1949 taxes were levied, possessed of funds over and above the total amount of principal and interest levied for in prior years and it is appellant's contention that the statute heretofore quoted requires that the district abate its 1949 levies for principal by such amounts.

We are of the opinion that the record does not sustain the contention. No showing has been made as to the exact manner by which the alleged surpluses accrued in the funds. Appellant suggests they possibly resulted from collections of delinquent taxes, interest on investments, premiums re-

ceived on the sale of bonds, tax collections in excess of net levies, and taxes levied in accordance with the ordinances which were not needed for payment of bond principal and interest because funds obtained from the other sources suggested were used for that purpose. Thus there is no proof that the amounts in the funds at the time the 1949 levies were made resulted from the purchase or cancellation of bonds as contemplated by the statute relied upon. Absent such a showing, we cannot hold that the district has violated any duty to abate the 1949 levies.

Nor do we find, as appellant suggests, that the district's failure to abate such levies by the amounts on hand in excess of previous levies results in a needless accumulation of funds. The ordinances authorizing the issue of the refunding bonds and the tax levies were clearly designed to allow the district to comply with the mandate of section 12 of article IX of the constitution that it provide for the payment of its bonded indebtedness as the same falls due. Numerous decisions of this court have held that revenue statutes must be given a reasonable construction and that no statute can override the positive provisions of the constitution. (See: *People ex rel. Gill* v. *110 South Dearborn Street Corp.* 363 Ill. 286, 290, and cases there cited.) While we believe that the terms of section 5 requiring abatement of levies for principal and interest by the amounts of bonds purchased or cancelled is compatible with the constitutional provision, we do not construe the section as demanding the result the appellant seeks. First of all, we presume that had the legislature intended the levies to be abated by amounts of premiums, interest or unexpected tax collections they would have so provided. Second, if the district were required to abate each year for the full amount of such items, the net result would be that each fund would show a net balance of zero for each year. Such a method in the face of the reality that tax collections are uncertain from year to year, would not, in our judgment,

constitute a sound business practice. It would appear, rather, that the question of whether the district should, in any given year, abate its levies by the amounts from sources other than the purchase and cancellation of bonds is one which must be left to the sound discretion of the taxing authority and its judgment considered final except where an arbitrary abuse of discretion is shown. There is no such showing in this case and we conclude that the objection was properly overruled.

For the reasons stated the judgment of the county court of Cook County is affirmed in part and reversed in part, and the cause is remanded for proceedings consistent with the views herein expressed.

*Affirmed in part and reversed in part and remanded.*