(No. 34845.—

THE PEOPLE *ex rel.* Benjamin S. Adamowski, Appellant, *vs.*
THE METROPOLITAN SANITARY DISTRICT OF GREATER
CHICAGO *et al.*, Appellees.

*Opinion filed June 20, 1958.*

272

BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRANCIS X. RILEY, and EDWARD J. HLADIS, of counsel,) for appellants.

RUSSELL W. ROOT, LAWRENCE J. FENLON, WERNER W. SCHROEDER, and JAMES E. HASTINGS, all of Chicago, for appellees.

Mr. Justice Hershey delivered the opinion of the court:

Plaintiff, The People of the State of Illinois, here appeal from a judgment of the circuit court of Cook County, dismissing an information in the nature of *quo warranto*, brought by Benjamin S. Adamowski, State's Attorney of Cook County. The information challenged the validity and constitutionality of amendments to section 9 of "An Act to create sanitary districts and to remove obstructions in the DesPlaines and Illinois rivers," providing for the establishment of a corporate working cash fund and a construction working cash fund by the issuance of bonds without referendum. Ill. Rev. Stat. 1957, chap. 42, par. 328.

The Metropolitan Sanitary District of Greater Chicago was organized pursuant to the aforesaid act, enacted May 29, 1889, as amended. Section 9 of the act, at the time of this district's organization, provided the district could borrow money for corporate purposes, and issue bonds therefor, but should not become indebted in an amount exceeding five per centum of the valuation of the taxable property within the district, and in no case exceeding the sum of $15,000,000. This section was amended on numerous occasions. The defendant district is authorized to issue and sell tax anticipation warrants not exceeding 75 per cent of the tax levied for corporate purposes for any year (Ill. Rev. Stat. 1957, chap. 146½, par. 2); to use a corporate pegged levy, and to appropriate for corporate purposes a sum not to exceed 75 per cent of the tax levied for corporate purposes. Ill. Rev. Stat. 1957, chap. 42, pars. 332 and 324m.

On May 28, 1957, the General Assembly enacted Senate Bill No. 324, amending section 9 of the act providing that bonds issued for the purpose of establishing a "corporate working cash fund as is provided by Section 9b of this Act" need not be submitted to the voters of the district for approval, and adding section 9b to the act, providing

that the corporate authorities might by ordinance establish a "corporate working cash fund" by issuing bonds in an amount not to exceed $10,000,000, at interest not to exceed 6 per centum per annum, maturing within 20 years from date of issuance of the first bond. The corporate authorities need only adopt an ordinance designating the purpose and fixing the date and amount of the bonds to be issued, the maturity date, the interest rate, place of payment and denomination, and providing for the levy and collection of a direct annual tax upon all taxable property in the district sufficient to pay the principal and interest as it falls due. The monies derived from such bonds may be disbursed from the fund in anticipation of taxes for corporate purposes, and the taxes when collected shall be first applied to the payment of any warrants and then to the reimbursement of the working cash fund. Tax anticipation warrants and disbursements from the working cash fund in aggregate for any one year shall not exceed 75 per cent of the amount of taxes extended for that purpose. It is further provided that when monies are available in the corporate working cash fund they shall be transferred to the corporate fund and disbursed for payment of salaries and other corporate expenses "so as to avoid, or reduce in amount, whenever possible, the issuance of tax anticipation warrants."

Also on May 28, 1957, the General Assembly enacted Senate Bill No. 322 amending section 9 of the act providing that bonds issued for the purpose of establishing a "construction working cash fund as provided by Section 9c of this Act" need not be submitted to the voters of the district for approval, and adding section 9c to the act, providing that the corporate authorities might by ordinance, establish a "construction working cash fund" by issuing bonds in an amount not to exceed $5,000,000, bearing interest not to exceed 6 per cent per annum, maturing in 20 years, and to be used for paying costs incurred for construction purposes as described therein, and otherwise

providing for the establishment, administration and use of such fund in exactly the same manner and in the same terms and provisions as the "corporate working cash fund" provided in section 9b of the act.

On June 24, 1957, the General Assembly enacted House Bill No. 482, also amending section 9 of the act in other particulars not in issue here, and failing to incorporate in the amending bill the amendments to section 9 enacted May 28, 1957.

On April 2, 1958, the district trustees adopted two ordinances, authorizing the issuance of $5,000,000 construction working cash fund bonds and $10,000,000 corporate working cash fund bonds. The issuance was not submitted to the voters of the district for approval. The bonds are dated August 1, 1958, and contain the provision that "For the prompt payment of this bond, both principal and interest, as the same become due, and for the levy of taxes sufficient therefor, the full faith, credit and resources of the Metropolitan Sanitary District of Greater Chicago are hereby irrevocably pledged."

This information alleged that the two amendments adding sections 9b and 9c and amending section 9 are unconstitutional, illegal and void for the reasons that (1) they violate section 9 of article IX of the Illinois constitution in that the tax provided is not for a corporate purpose, (2) they violate section 1 of article IX of the Illinois constitution in that the tax provided therein is not needful, (3) they violate section 9 of article IX, section 2 of article II of the Illinois constitution, and the fourteenth amendment to the constitution of the United States in that the issuance of the bonds and the levy and collection of taxes to pay the bonds was not submitted to the legal voters, (4) that the said amendments were repealed by House Bill 482 and (5) the ordinances are null and void in that they irrevocably pledge the resources of the district without authority. The defendant district moved to strike the information, and upon

hearing the motion was allowed. The plaintiff elected to stand upon the information and an order was entered dismissing the information. Plaintiff, thereupon, appealed to this court, a constitutional question being involved, alleging the issues raised in the information.

Plaintiff first contends that these two amendatory acts purport to vest the district with authority to levy a tax which violates section 1 of article IX of the Illinois constitution which provides that the General Assembly shall provide such revenue as may be "needful," that they violate the provisions of section 9 of article IX of the Illinois constitution providing that the General Assembly may vest all municipal corporations with power to assess and collect taxes for "corporate purposes." Plaintiff asserts that these amendments, considered with the other statutory fiscal powers of the district, permit it to obtain revenues that are not needful, and to accumulate them unlawfully, rather than use them for current corporate purposes. Thus, plaintiff says that the people are deprived of their property without due process of law in violation of section 2 of article II of the Illinois constitution and the fourteenth amendment to the Federal constitution.

Relying upon the cases of *Mathews* v. *City of Chicago,* 342 Ill. 120, and *People ex rel. Brenza* v. *Gebbie,* 5 Ill.2d 565, the plaintiff objects that the working cash funds provided by these amendments are created by the statute "so as to avoid, or reduce in amount, whenever possible, the issuance of tax anticipation warrants," instead of replacing entirely the use of tax anticipation warrants, thus permitting the district, if it so wishes, to accumulate a working cash fund which is not used or needed, and which fails to meet the required standard of a working cash fund by replacing tax anticipation warrants.

Working cash funds, as such, are approved as a proper method of municipal finance in the case of *Mathews* v. *City*

*of Chicago,* 342 Ill. 120. The statutes there involved provided that working cash funds might be raised by bond issue and used "so as to avoid, whenever possible, the issuance of tax anticipation warrants." The court there found that the assessment of taxes to establish and maintain such fund was "needful" as providing a method for current financing of corporate expenses, thus eliminating the disabilities encountered by the fact that taxes are collected some sixteen months after they are levied for the current year, and they look toward the eventual elimination of tax anticipation warrants and the consequent interest charge incurred by the municipal corporations.

The present amendments provide for working cash funds for corporate purposes limited to $10,000,000 and for construction purposes limited to $5,000,000, whereas the pegged levy is considerably higher. Hence the plaintiff objects that these funds can never look to the elimination of tax anticipation warrants, as in the *Mathews case.* Plaintiff insists that such elimination of tax anticipation warrants is a necessary requirement to validity of such funds. The funds here in question are sufficient to meet at least five and ten millions of the current construction and corporate expenses, and to that extent can eliminate at least a part of the tax anticipation warrant load, thus saving some interest charges. These funds are thus needful in the same manner as those funds approved in the *Mathews case.* Moreover neither the *Mathews case* nor the case of *People ex rel. Brenza* v. *Gebbie,* 5 Ill.2d 565, required that tax anticipation warrants must be eliminated entirely by such funds, but rather recognized that such would be the end result in the *Mathews case.* Neither case held that both methods of current financing could not be employed. The *Gebbie case* at page 574 of 5 Ill.2d states "It is to be noted also that even in the *Mathews case,* the court recognized that tax warrants would have to be issued in conjunction

with the 'working cash fund' plan until the fund became fully operative, yet found no constitutional barrier to the co-existence of the two methods."

Plaintiff additionally complains that the establishment of such working cash funds, together with the district's other statutory fiscal powers, would permit the district to unlawfully accumulate monies without using them for a corporate purpose, thus violating the designated constitutional provisions. It is true that the unnecessary accumulation of money in public treasuries is unlawful, as depriving the people of the use of their money, and constitutes a temptation to expend public funds recklessly and needlessly. Plaintiff contends that since these acts only require these funds to be used to "avoid, or reduce in amount, whenever possible, the issuance of tax anticipation warrants," the district authorities could reduce the tax anticipation warrants in only a small degree, thus complying with the statute, and accumulate the remainder. However, the same paragraph provides that when monies are available in the corporate (construction) working cash fund "they *shall* be transferred" to the corporate (or construction) fund and disbursed for salaries and other corporate (or construction) expenses "so as to avoid, or reduce in amount, whenever possible, the issuance of tax anticipation warrants." Certainly this provision is mandatory, and requires the district authorities to so act, and thus prevent unlawful accumulation. Where a constitutional construction is apparent, we must adopt that theory which is consonant with constitutional validity. (*People ex rel. Gregg* v. *Tauchen,* 415 Ill. 91.) Were the municipal authority to proceed in such manner as is suggested by plaintiff, its action might be subject to attack, or the tax levied for any current year for that purpose might be held invalid, but that question is not presented here for our determination. The acts themselves provide severe penalties against any trustee, officer, or other person holding a position of trust or employment

in the district, for wilful violation of the provisions of the acts.

The acts in the *Mathews case* only required that the monies in the working cash fund shall be transferred to the proper fund to meet corporate expenses, so as "to avoid, whenever possible" the issuance of tax anticipation warrants. The current acts are the same, except that they recognize the fact that these funds are not of such a size as to eliminate all tax anticipation warrants if they are issued to the maximum degree obtainable.

The district also is empowered by section 5.3 of the Sanitary District Act (Ill. Rev. Stat. 1957, chap. 42, par. 324m) to appropriate only 75 per cent of its levy for corporate or construction purposes. This provision was held constitutional in the case of *People ex rel. Brenza* v. *Gebbie*, 5 Ill.2d 565. Thus the district may obtain more in taxes than is appropriated to meet its obligations and expenses. It was provided by amendment in 1957 that the money received from the levy in excess of an amount required for the payment of warrants and interest thereon issued in anticipation of such tax levy, and in excess of any money transferred from corporate or construction working cash funds, shall become a part of the corporate or construction fund for the budget year in which the amount is estimated to be received by the district, and the tax authorized to be levied for the subsequent budget year shall be reduced by that amount. Section 9 of the Sanitary District Act provides that such monies received from the tax levy, after payment of warrants and interest thereon issued in anticipation of its collection, shall then be used to reimburse the working cash funds in the amount transferred therefrom. It is thus clear that no accumulation can result from this combination of financing methods under a constitutional operation of the working cash fund provisions.

The working cash funds authorized by these acts permit

the assessment and levy of a tax for needful and corporate purposes, and do not provide for an unlawful accumulation of funds depriving the people of the use of their money.

Plaintiff next asserts that when this district was established under the Sanitary District Act, section 9 authorized the district to incur bonded indebtedness for corporate purposes aggregating not more than $15,000,000. The current bonded indebtedness amounting to $100,000,000, they claim that the bonds issued to establish these working cash funds are in excess of the original limitation, and the failure of the amendatory acts to require the approval of the legal voters for such issuance, constitutes a denial of due process in depriving the taxpayers of their property in violation of section 2 of article II of the Illinois constituton and the fourteenth amendment to the Federal constitution.

In support of their position plaintiff relies upon the case of *Cornell* v. *People ex rel. Walsh,* 107 Ill. 372, wherein this court held invalid a legislative amendment vesting in the Governor the power to appoint commissioners to vacancies occurring upon the South Park District board, which district was originally organized by vote of the residents of the district under an act providing that such vacancies upon the board of commissioners should be filled by appointment of the judge of the circuit court of Cook County. The court reasoned that the people of the district agreed to assume the burden of taxation which the corporate authorities, appointed by the method existing at the time of the approval of the district, had the power to impose. Thus the court determined that commissioners selected by any other method, not approved by vote of the people, could not constitutionally impose taxes, and held the act unconstitutional. By analogy, the plaintiff argues that the people must approve any issuance of bonds, to be paid by taxes imposed upon them, in excess of the limit existing when they approved the creation of this district.

The *Cornell case* decided no more than that only cor-

porate authorities elected by, or the mode of whose appointment has been approved by, the people, may impose taxes. Corporate authorities, within the purview of section 9 of article IX of our State constitution have been so defined. (*McFarlane* v. *Hotz,* 401 Ill. 506.) Only the legislature, or corporate authorities empowered by the legislature may impose a burden upon a municipality to be paid by taxation. (*People ex rel. Gallenbach* v. *Franklin,* 388 Ill. 560.) Thus, while only the legislature, or corporate authorities empowered by it, may impose a burden to be paid by taxation, the sovereign speaking through the legislature may grant to different municipalities the power to levy any tax not limited by the constitution. (*Sommers* v. *Patton,* 399 Ill. 540.) Only section 12 of article IX of our constitution limits the amount a municipality may borrow to five per cent of the value of the taxable property therein, and for which it may provide payment by taxation. (*County of Coles* v. *Goehring,* 209 Ill. 142.) The amount of taxes and the rate of taxation are exclusively for the General Assembly and may be increased or decreased at its pleasure. (*Mathews* v. *City of Chicago,* 342 Ill. 120; *People ex rel. Campe* v. *Board of Review,* 290 Ill. 467.) Likewise the limits of bonded indebtedness affecting the imposition of a tax can be increased or decreased within constitutional limits, without affecting the constitutional validity of the tax or burden imposed. The legislature may pass any law not expressly prohibited by the constitution, and it possesses every power not delegated to another department or to the Federal government, or not denied to it by the Federal or State constitutions. (*Bradley* v. *Casey,* 415 Ill. 576.) The limit of indebtedness upon which plaintiff relies as fixed in the act of 1889 under which this district was organized has been increased numerous times, and bond issue provisions have twice been added without requiring the issuance thereof to be submitted to the voters for approval.

The taxpayers are given constitutional control over the

imposition of taxes by having a voice in the selection of, or the mode of selection of, the corporate authorities who impose taxes. That principle was recognized in the *Cornell case*. However, there is no constitutional requirement that the issuance of bonds imposing a burden of taxation be submitted to the voters. The burden here created by the establishment of these working cash funds, calling for taxation to pay the obligation created, is needful, is for a corporate purpose, is imposed by corporate authorities, and is within the limits of section 12 of article IX of our State constitution. The people of the district were not deprived of their property without due process of law by the failure of these amendatory acts to require submission of the question of issuance of bonds for establishing these working cash funds to the vote of the people.

The bonds authorized by the district pursuant to these two acts, copies of which are attached to the information, provide, "For the prompt payment of this bond, both principal and interest, as the same become due, and for the levy of taxes sufficient therefor, the full faith, credit and resources of the Metropolitan Sanitary District of Greater Chicago, are irrevocably pledged." Plaintiff objects that the bonds are void, and that the ordinances authorizing them are *ultra vires* in that the district has no authority to pledge or mortgage its property.

By the language above quoted, the district pledges to pay the principal and interest as it becomes due, and to levy taxes for that purpose. All that is within the authority of the district. The main issue appears to arise from plaintiff's assumption that the word "resources" means only the tangible properties within the district comprising its wealth. The word means as well: a means of accomplishing something; a measure or action that can be resorted to; the ability to deal promptly and effectively with problems and difficulties. (Webster's New Twentieth Century Dictionary, Unabridged, 2d ed.) All persons are presumed to know the

law, and the district having no authority to pledge property in payment of these obligations, it should be obvious to all that the district pledged merely its abilities and capabilities, as well as its full faith and credit as an existing municipal corporation, to provide for and to make payment of these obligations.

Finally plaintiff contends that these amendatory acts, enacted as Senate Bills 322 and 324 on May 28, 1957, were repealed by House Bill 482 enacted June 24, 1957, amending the same statutory section without incorporating, in its complete statement of the section, the amendments effected by the acts of May 28, 1957. Senate Bills 322 and 324 added new sections, 9b and 9c, to the Sanitary District Act, setting up working cash funds. House Bill 482 merely eliminated any reference in the election portion of section 9 to clerks of election.

It is not unusual for two or more bills to be passed at the same session of the legislature pertaining to the same subject, or amending the same statute. For the later statute to operate as a repeal by implication of an earlier one, there must be such manifest and total repugnance that the two cannot stand together. If the two statutes are capable of being construed so that both may stand, it is the duty of the court so to construe them. (*Du Bois* v. *Gibbons,* 2 Ill.2d 392.) It is only where there is a clear repugnance between the two acts and the provisions of both cannot be carried into effect that the later law must prevail. *People* v. *Holderfield,* 393 Ill. 138.

These three bills are not repugnant in even the slightest degree. The provisions of each may be effective without affecting the other at all. We have, therefore, no alternative but to declare that each of these statutes amending section 9 are valid, and those enacted as Senate Bills 322 and 324 were not repealed by House Bill 428.

These two amendatory acts do not violate any constitutional provisions. They are valid and operative statutes,

and the bonds issued pursuant to their provisions are likewise valid obligations. The judgment of the circuit court of Cook County is, therefore, affirmed.

*Judgment affirmed.*