(No. 44902.—

MICHAEL J. GRACE, Appellee, v. MICHAEL J. HOWLETT, Auditor of Public Accounts, *et al.*, Appellants.

*Opinion filed April 17, 1972. —Rehearing denied May 25, 1972.*

UNDERWOOD, C.J., dissenting.
DAVIS, J., dissenting in part and concurring in part.

WILLIAM J. SCOTT, Attorney General, of Springfield (R. R. McMAHAN, STEPHEN A. MILWID, Special Assistant Attorney General, and FRANCIS T. CROWE and BERNARD GENIS, Assistant Attorneys General, of counsel), for appellant.

LEONARD M. RING, of Chicago, for appellee.

RICHARD E. GOODMAN and RICHARD P. HEFFERAN, both of Chicago, for American Mutual Insurance Alliance, *amicus curiae.*

PAUL C. BLUME, of Chicago, for National Association of Independent Insurers, *amicus curiae.*

THOMAS N. TODD and ROBERT L. TUCKER, both of Chicago, for Insurance Brokers Association of Chicago, People United To Save Humanity, The Chicago Urban League, Inc., Cosmopolitan Chamber of Commerce, and United Mortgage Bankers of America, Inc., *amici curiae.*

CORNELIUS E. TOOLE, of Chicago, for Chicago Metropolitan Council, National Association for the Advancement of Colored People, *amicus curiae.*

ASHER, GREENFIELD, GUBBINS & SEGALL, of Chicago, for the Illinois State Federation of Labor and Congress of Industrial Organizations, *amicus curiae.*

JACK E. HORSLEY and RICHARD F. RECORD, JR., of Craig & Craig, Mattoon, JOSEPH H. BRAUN and ROBERT G. CORBETT, of Chicago, and CHARLES C. COLLINS, of Washington, D.C., for American Automobile Association, Inc., *amicus curiae.*

MR. JUSTICE SCHAEFER delivered the opinion of the court:

By Public Act 77–1430, which became effective January 1, 1972, the General Assembly added article XXXV to the Illinois Insurance Code. (Ill.Rev.Stat. 1971,

ch. 73, pars. 1065.150 through 1065.163.) This action was instituted in the circuit court of Cook County by the plaintiff, Michael J. Grace, against Michael J. Howlett, Auditor of Public Accounts, and other State officers, to enjoin them from expending funds appropriated for the enforcement of the new article. Evidence was heard, and the court found that certain provisions of the new article violated the constitution of the United States and the constitution of the State of Illinois. An injunction was issued and the defendants appealed directly to this court under Rule 302(a)(1). Ill.Rev.Stat. 1971, ch. 110A, par. 302(a)(1).

Article XXXV is entitled "Compensation of Automobile Accident Victims." Section 608 is a key provision of the article. In the severability clause (section 613), the General Assembly has provided that "Section 608, or any part thereof, of this Article is expressly made inseverable." Section 608 relates to the amount of damages which may be recovered in actions for accidental injuries arising out of the use of motor vehicles. In essence it provides that (except in cases of death, dismemberment, permanent disability or serious disfigurement) the amount recoverable for pain, suffering, mental anguish and inconvenience "may not exceed the total of a sum equal to 50 percent of the reasonable medical treatment expenses of the claimant if and to the extent that the total of such reasonable expenses is $500 or less, and a sum equal to the amount of such reasonable expenses if any, in excess of $500."

Section 609 deals with the procedures to be followed in certain cases arising out of the use of automobiles. It directs that in counties with a population of 200,000 or more inhabitants, "the Supreme Court of this State shall, by Rules of Court, provide for the arbitration of all cases where the cause of action arose out of the operation, ownership, maintenance or use of a motor vehicle and where the amount in controversy may not exceed $3,000, exclusive of interest and costs." Section 609 also provides

that in all other counties "the Supreme Court of this State may, by Rules of Court, provide for the arbitration of all" such cases. It requires "[t]he Court" to maintain a list of attorneys who have agreed to serve as arbitrators and requires that "[t]he Court Rules shall provide" that cases must be assigned to a single arbitrator "in reasonable rotation. Any party to arbitration may, upon payment of the additional costs involved therein, request that the arbitration hearing be before a panel of 3 arbitrators \*\*\*." The award "must be entered by the Court in its record of judgments, and has the effect of a judgment upon the parties unless reversed upon appeal." Either party "may appeal from an award of arbitration to the Court in which the case was pending \*\*\*." The party who appeals "must pay all costs that may have accrued in such suit or action. \*\*\* All appeals must be de novo both as to the law and the facts."

Section 600 of the article relates to insurance. It provides that every policy insuring against liability for "accidental bodily injury or death suffered by any person arising out of the ownership, maintenance or use of any private passenger automobile registered or principally garaged in this State and insuring 5 or less private passenger automobiles, must provide coverage affording payment of the following minimum benefits to the named insured and members of his family residing in his household when injured in any motor vehicle accident, and to other persons injured while occupying such insured automobile as guest passengers or while using it with the permission of the named insured, and to pedestrians struck by the automobile in accidents occurring within this State \*\*\*." The specified benefits include payment of all reasonable and necessary medical, hospital and funeral services incurred within one year from the date of the accident, "subject to a limit of $2,000 per person;" payment of 85% of the income lost as a result of total disability, "subject to a limit of $150 per week for 52

weeks per person;" payment in reimbursement of expenses incurred for essential services ordinarily performed by an injured person who is not an income or wage producer, "subject to a limit of $12 per day for 365 days per person injured." A "private passenger automobile" is defined to mean "a sedan, station wagon or jeep-type automobile not used as a public livery conveyance for passengers, nor rented to others, and includes any other 4 wheel motor vehicle used as a utility automobile, pickup truck, sedan delivery truck or panel truck which is not used primarily in the occupation, profession or business of the insured."

Section 601 deals with uninsured or hit-and-run motor vehicle coverage, and section 602 with the exclusions permitted under an insurance policy. Sections 603 and 604 require prompt payment of the benefits described in section 600 and they also contain provisions designed to guard against duplication of payments or reimbursement of the same loss. Section 605 deals with subrogation and with arbitration between insurance companies.

Section 610 is concerned with false, fraudulent or exaggerated claims for personal injury or damage to property. It provides that anyone who obtains or attempts to obtain money or other things of value by false representation "may, upon conviction, if the sum so obtained or attempted to be obtained is less than $100, be fined not more than $500 or imprisoned in a penal institution other than the penitentiary for not more than one year, or both," and that if the amount is $100 or more, said person "may, upon conviction, be fined not less than an amount equal to 3 times the sum or sums so obtained or attempted to be obtained or imprisoned for not more than 10 years, or both." Section 610 also provides that if the person convicted of a violation acted under the authority of any license issued "by any unit of State or local government acting pursuant to the Constitution of the State of Illinois, the court must further order the immediate temporary suspension of the license or

licenses involved and issued and must mandate an immediate inquiry by the body or bodies charged with the responsibility and duty of issuing or supervising the licenses to determine whether the licenses should be permanently suspended or revoked."

Section 611 provides for medical disclosure by any person claiming damages for personal injuries arising out of the use of a motor vehicle or benefits therefor under an insurance policy, and section 612 authorizes the Director of Insurance to promulgate regulations necessary to implement the provisions of the article which relate to insurance. It continues: "He also has the authority to approve schedules of reasonable maximum benefit payments for specified medical services which companies may incorporate into their policies of basic mandatory or optional excess coverages herein prescribed."

The defendants describe article XXXV as "the culmination in Illinois of a growing public demand for a change in the way society deals with the enormous legal, social and economic problems spawned by motor vehicle crashes." They say that "one of the major evils of the present system of compensating auto accident victims is the small personal injury suit," and that "[w]hile opinions may differ on solutions, those who have studied the problem generally agree that there are three major defects in the existing system of compensating victims of auto crashes: (1) it results in inequitable distribution of compensation among personal injury claimants; (2) it is excessively and needlessly expensive and inefficient; and (3) it makes excessively burdensome demands upon the limited resources of the judicial system." These are the evils that article XXXV is said to have been intended to eliminate. We have been referred by both parties to numerous statistical analyses as well as to literature concerning relationships between court congestion and litigation stemming from automobile accidents. See, *e.g.,* Motor Vehicle Crash Losses and Their Compensation in

the United States, a study by the United States Department of Transportation; James and Law, Compensation for Auto Accident Victims (1952), 26 Conn. Bar Journal 70; Morris and Paul, The Financial Impact of Automobile Accidents (1962), 110 U. Pa. L. Rev. 913; Conard *et al.* Automobile Accident Costs and Payments—Studies in the Economics Of Injury Reparation (1964); R. Keeton and J. O'Connell, Basic Protection for the Traffic Victim (1965).

We assume that the problems described by the defendant do exist. But as has been pointed out, the fact that a problem "does exist does not permit arbitrary or unrelated means of meeting it to be adopted." *(Heimgaertner v. Benjamin Electric Manufacturing Co. (1955), 6 Ill.2d 152.)* We turn therefore to a consideration of the numerous constitutional objections that have been leveled at article XXXV. Violations of due process and equal protection under both State and Federal constitutions are asserted, as well as violations of the jury trial provisions of section 13 of article I, the separation of powers provision of section 1 of article II, and the provisions of sections 8 and 13 of article IV of the constitution of Illinois.

It is important to note at the outset that sections 600 and 608 are both aimed at a single problem. They are part of a single act directed toward evils in the existing method of disposing of personal injury claims arising out of motor vehicle accidents. That singleness of purpose is emphasized by the severability section (section 613), the effect of which is a legislative declaration that without the limitations upon recovery established in section 608, the other provisions of article XXXV would not have been enacted.

Despite the unified purpose of the two provisions, the limitations placed by section 608 upon the amounts recoverable for pain, suffering, and the like apply to all persons who are injured by automobiles, and not just to those injured persons who are covered by a "first party" policy under section 600. In other words, article XXXV requires that only "private passenger automobiles" must be

covered by the policies issued under section 600, but it prohibits the award of general damages in excess of section 608 limitations, to all persons injured by any kind of motor vehicle, whether covered by such a policy or not.

The category of private passenger vehicles, with respect to which coverage is required to be extended under section 600, is not clearly defined. The exclusion of rented cars and livery vehicles is specific, but the statutory definition also apparently excludes any 4-wheel motor vehicle which is "used primarily in the occupation, profession or business of the insured." The extent to which the automobiles of doctors, lawyers, engineers, architects and salesmen, for example, are included in the provisions of section 600 is uncertain.

The effect of the classifications created by article XXXV may be visualized if we assume that two pedestrians each suffer an identical injury when struck by a negligently operated automobile: A, who is struck by a car which is included within the first party coverage category of section 600 gets prompt payment of his medical and other expenses as provided by section 600; B, who is struck by a car which is not included within the enumerated categories in section 600 does not receive any payment under section 600. In addition, the opportunity to recover damages in an action at law which B had prior to the enactment of article XXXV is sharply curtailed by the restrictions upon recovery which are contained in section 608. Furthermore, his right to have his case tried before a jury may be clogged by the mandatory arbitration provisions of section 609, a matter which will subsequently be discussed in detail.

Section 22 of article IV of the 1870 constitution of Illinois prohibited the enactment of a special law in many enumerated instances, and concluded: "In all other cases where a general law can be made applicable, no special law shall be enacted." The 1970 constitution includes, for the first time, an equal-protection clause in article I, section 2.

The 1970 constitution also provides, in article IV, section 13: "The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." While these two provisions of the 1970 constitution cover much of the same terrain, they are not duplicates, as the commentary to section 13 of article IV points out: "In many cases, the protection provided by Section 13 is also provided by the equal protection clause of Article I, Section 2." (S.H.A., Const. of 1970, Art. IV, sec. 13, at 244.) Indeed, as pointed out in the consolidated cases reported as *Bridgewater v. Hotz (1972), 51 Ill.2d 103,* the new section 13 of article IV has increased judicial responsibility for determining whether a general law "is or can be made applicable."

Unless this court is to abdicate its constitutional responsibility to determine whether a general law can be made applicable, the available scope for legislative experimentation with special legislation is limited, and this court cannot rule that the legislature is free to enact special legislation simply because "reform may take one step at a time." (See, *Williamson v. Lee Optical of Oklahoma, Inc. (1955), 348 U.S. 483, 99 L.Ed. 563, 75 S.Ct. 461.*) The constitutional test under section 13 of article IV is whether a general law can be made applicable, and in this case that question must receive an affirmative answer.

There are many purposes for which the obvious differences between private passenger automobiles, buses, taxicabs, trucks and other vehicles would justify different legislative treatment. But the determination of the amount to be recovered by persons injured by those vehicles and the conditions governing that recovery is not one of those purposes. What was true of the municipal tort liability statutes involved in *Harvey v. Clyde Park District (1964), 32 Ill.2d 60,* is true here; those classified are those who suffer the accidental injuries as well as those who inflict them. There we said: "Many of the activities that

frequently give rise to tort liability are common to all governmental units. The operation of automobiles is an obvious example. From the perspective of the injured party, or from the point of view of ability to insure against liability for negligent operation, there is no reason why one who is injured by a park district truck should be barred from recovery, while one who is injured by a city or village truck is allowed to recover, and one injured by a school district truck is allowed to recover only within a prescribed limit. And to the extent that recovery is permitted or denied on an arbitrary basis, a special privilege is granted in violation of section 22 of article IV." 32 Ill.2d at 65. See also, *Grasse v. Dealer's Transport Co. (1952), 412 Ill. 179.*

*Delaney v. Badame (1971), 49 Ill.2d 168,* which sustained the guest statute, does not require a different conclusion. The statute involved in that case required a greater degree of fault than ordinary negligence before one who had voluntarily become a guest passenger in an automobile could recover for injuries that he suffered. The same requirement was not made applicable to guests in boats or in private homes. But in that case the legislature could rationally have found relevant differences in the circumstances under which the various voluntary relationships of host and guest were created which justified the imposition of differing standards of care.

The trial court held that section 608 was invalid because the general damages recoverable by an injured party were based upon his reasonable expenses for medical services. The court found that substantial differences existed between the cost of medical services provided for the poor and for the wealthy, and also between different geographical areas in the State. The trial court therefore held that section 608 would result in an irrational discrimination against economically disadvantaged persons and those who received less expensive medical treatment in

some portions of the State. As we have already held that section 608 is invalid, we need not resolve this question.

The provisions of section 609 with respect to compulsory arbitration give rise to numerous constitutional issues. At bottom is the question of whether such a requirement violates the right of trial by jury guaranteed by section 13 of article I. See, *Cocalis v. Nazlides (1923), 308 Ill. 152; White Eagle Laundry Co. v. Slawek (1921), 296 Ill. 240;* Notes, 78 Harv. L. Rev. 1250, 8 Stan. L. Rev. 410; Annot., 55 A.L.R.2d 445.

In their initial brief the appellants sought to meet the contention that section 609 impinges upon the constitutional right of trial by jury by arguing: "Subsection (g) specifically provides that all appeals must be de novo both as to the law and the facts on any appeal to the court from an arbitration award. As one of the writers of this brief pointed out in 1962, such a right to a trial de novo permits the use of arbitration as an effective tool to deal with the problem of court congestion and at the same time preserve the right to trial by jury (Milwid, Arbitration As A Supplement To Judicial Proceedings In Personal Injury Cases, 1962 Ill. L. Forum 213). The constitutionality of legislation providing similar arbitration proceedings for minor automobile accident cases was sustained by the Pennsylvania Supreme Court and a petition for leave to appeal was denied by the United States Supreme Court. *(Application of Smith, 381 Pa. 223, 112 A.2d 625 [1955], appeal dismissed sub nom. Smith v. Wissler, 350 U.S. 858 [1955].)*"

After the appellees, citing Professor Trumbull's article in 45 Chicago Bar Association Record 165, 172–3, had pointed out that one of the objectives of the Judicial Article of 1962 was the abolition of trials *de novo,* and that this objective has been retained in article VI of the Illinois constitution of 1970, the appellants shifted ground, and in their reply brief they said: "While the

legislature has loosely used the word 'appeal' in Section 609 of Article XXXV, the mandatory small claims arbitration procedures envisioned by the section clearly are not appellate in nature at all, and do not fall within the class of 'de novo appeals' that the Judicial Article of 1962 sought to eliminate." Appellants distinguish between the "typical case" of a *de novo* appeal, where the "adjudicatory process has already been initiated by the time the litigation enters the circuit court's separate and independent jurisdiction" on the one hand, and on the other section 609's arbitration procedures which are initiated by the filing of a complaint in the circuit court, create no adjudicatory tribunals separate from the circuit court and are "akin to other pre-trial procedures, which are part and parcel of the circuit court's original jurisdiction."

Section 9 of article VI of the constitution provides that the circuit court shall have "original jurisdiction of all justiciable matters *** and shall have such power to review administrative action as provided by law." Under the provisions of section 609 the award of the arbitrator "must be entered by the Court in its record of judgments, and has the effect of a judgment upon the parties unless reversed upon appeal." Such a procedure cannot accurately be likened to pretrial procedures. By the terms of the statute it is a judgment which is being reviewed. It is being reviewed by the wasteful process of a duplicative trial *de novo,* the process which was intended to be eliminated. The basis upon which the Pennsylvania court was able to sustain compelled arbitration in *Application of Smith* is therefore not available in Illinois.

The constitutional amendment of 1962 also provided: "There shall be no fee officers in the judicial system." Section 14 of article VI of the constitution of 1970 repeats this prohibition. The compulsory arbitration provisions of section 609 require that the losing litigant pay the fees of the arbitrator, which fees are treated as costs. The section requires that as a condition to appeal the

appellant must pay all costs that may have accrued within 20 days after the award of the arbitrator has been entered upon the docket of the court.

The compulsory arbitration provisions of section 609 violate section 14 of article VI, as well as the jury trial provisions of section 13 of article I. In view of the conclusions we have expressed, we consider it unnecessary to consider whether section 609 also interfered with the rulemaking power of this court. *Cf. People ex rel. Stamos v. Jones (1968), 40 Ill.2d 62.*

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

MR. CHIEF JUSTICE UNDERWOOD, dissenting:

For the reasons herein stated I cannot agree with the conclusions my colleagues reach in this case.

As the court notes, defendants characterize Public Act 77—1430, which incorporated article XXXV into the Illinois Insurance Code, as the "culmination in Illinois of a growing public demand for a change in the way society deals with the enormous legal, social and economic problems spawned by motor vehicle crashes." It is, I believe, sufficiently important to note, even at the risk of repetition, the fact that recent years have witnessed increasing concern by legislative bodies, both State and Federal, law-review contributors and others with what are viewed as the shortcomings of the present tort law-liability insurance system in dealing with the very substantial problems presented by the deaths, injuries and property damage resulting from the operation of automobiles as indicated in the congressionally directed study by the United States Department of Transportation, popularly referred to as the DOT study, and other articles and books several of which are cited in the majority opinion. Numerous surveys and estimates have been made of the numbers of persons killed and injured in automobile

accidents and the amounts of economic loss emanating therefrom. The publication of the Illinois Department of Public Works, "Accident Facts," placed the number of those dying in Illinois in 1970 as the result of highway accidents at 2,345 and the number of injured at 159,878.

Criticism has focused upon the uncertainty of financial recovery and ensuing economic hardship for accident victims under a system such as ours wherein that recovery is conditioned upon proof of absence of fault on the part of the injured party and the existence of fault on the part of the opposing party; the tendency to overcompensate those with minor injuries (because insurers prefer to make generous settlements of smaller claims and avoid the risks and expenses of litigation) and to undercompensate the seriously injured; delay in receiving compensation (in which the existing court congestion, particularly in metropolitan areas, is a substantial factor); the inhibiting effect upon rehabilitation of the injured individual inherent in a system which pays nothing until "fault" is established and thus renders it financially impossible or tactically unwise to inaugurate a rehabilitation program until such a determination is made or a settlement reached; alleged excessive costs of the present system which increase the public cost of insurance; and the temptations to dishonesty in the making of false or exaggerated claims. (Keeton and O'Connell, Basic Protection for the Traffic Victim.) Various plans have been advanced since the 1932 Columbia Report (see Compensation for Automobile Accidents: A Symposium (1932), 32 Colum. L. Rev. 785), and the legislatures of at least four other States and Puerto Rico have now adopted new methods for compensating automobile accident victims while other State legislatures consider similar proposals. Broadly stated, those statutory plans are, with differing modifications, bottomed upon a system of insurance providing limited but prompt payments, without regard to fault, for lost wages and out-of-pocket expenses of accident victims, accompanied

by varying limitations upon the victim's right to recover for pain and suffering.

The arguments favoring this type of treatment emphasize that those accident victims who are covered will receive prompt payment regardless of fault, that anticipated reductions in insurance premiums and the correspondingly wider availability of insurance, when coupled with the potential relief of court congestion resulting from elimination of many cases involving only minor injuries, will eradicate or substantially lessen the problems said to exist in the present system.

Apparently aiming at the twin goals of creating an insurance system which would more promptly and equitably compensate, without regard to fault, persons injured in motor vehicle accidents and of eliminating court congestion, the Illinois General Assembly focused its efforts at improvement in the area of private passenger automobile liability insurance and, broadly stated, revised our system to provide prompt payment, subject to specific limitations, for wages lost and out-of-pocket expenses to the owners, families, guests and permittees of, or pedestrians injured by, insured vehicles (sometimes referred to herein as first-party benefits). It simultaneously limited the recovery of general damages (*i.e.,* pain and suffering, mental anguish and inconvenience) by those injured in motor vehicle accidents, excepting from the limitations upon recovery those cases involving death, dismemberment, permanent disability or disfigurement.

It is in the context of the above background, and the presumption of constitutionality attendant upon all legislative enactments *(Latham v. Board of Education (1964), 31 Ill.2d 178),* that the challenges here made to the validity of article XXXV must be considered.

My basic disagreement with the court stems from its treatment of sections 600 and 608. As I understand the opinion, the application to injured persons, not entitled to first-party benefits under the limited scope of section 600,

of the ceiling upon recovery of general damages (pain and suffering) imposed by section 608 renders the latter section unconstitutional. This conclusion is apparently bottomed upon the court's judgment that sections 600 and 608 represent constitutionally impermissible special legislation under section 13 of article IV (the "special law" prohibition). We considered the effect of that section in *Bridgewater v. Hotz,    Ill.2d    .* We there held, referring to section 13, that "[t] he principal change effected by section 13 is that it specifically rejects the rule enunciated in a long line of decisions of this court that whether a general law can be made applicable is for the legislature to determine *(Sommers v. Patton (1948), 399 Ill. 540; Trustees v. The Commissioners of Lincoln Park (1918), 282 Ill. 348)* and specifically provides that 'it shall be a matter for judicial determination.' We conclude, therefore, that although the scope of judicial review of legislation is to that extent enlarged, section 13 requires no change in our definition of when a law is 'general and uniform', 'special', or 'local'." Additionally, we there commented: "Whether the course chosen is wise or whether it is the best means to achieve the desired result is not a proper subject of judicial inquiry. *(Schreiber v. County of Cook (1944), 388 Ill. 297; Stewart v. Brady (1921), 300 Ill. 425.)* If there is a reasonable basis for the classification, and it bears a reasonable and proper relation to the purposes of the act and the evil it seeks to remedy, it does not violate the constitutional proscription of special or local laws. *(People ex rel. Du Page County v. Smith (1961), 21 Ill.2d 572; Crews v. Lundquist (1935), 361 Ill. 193.)* \*\*\* 'If there is a reasonable basis for differentiating between the class to which the law is applicable and the class to which it is not, the General Assembly may constitutionally classify persons and objects for the purpose of legislative regulation or control, and may pass laws applicable only to such persons or objects. *(Hunt v. County of Cook, 398 Ill. 412.)* \*\*\* Such classifications

will be sustained where founded upon a rational difference of situation or condition existing in the objects upon which it rests, and where there is a reasonable basis for the classification in view of the objects and purposes to be accomplished. *DuBois v. Gibbons, 2 Ill.2d 392; Gaca v. City of Chicago, 411 Ill. 146'.*"

The fundamental question for our determination is, therefore, whether there exists a reasonable basis for the classification of vehicles to which first-party benefits apply, and for the limitations upon recoveries of general damages applicable to all persons injured in motor vehicle accidents except those cases involving death, permanent injury, serious disfigurement or dismemberment.

Applying the above rules to the plaintiff's contention, and the trial court's holding, that by limiting the availability of section 600 "no-fault" benefits to insurance policies covering private passenger automobiles, the Act creates an arbitrary classification in violation of the due-process and equal-protection clauses of the fourteenth amendment to the United States constitution and section 2 of article I of the Illinois constitution of 1970, I reach a conclusion contrary to that of the majority. Because I believe sections 600 and 608 are not violative of the requirements of equal protection or section 13 of article IV, it becomes necessary to consider, in this dissent, all of plaintiff's arguments relating thereto rather than only those singled out in the court's opinion.

As this court has previously stated: "The test of any legislative classification essentially is one of reasonableness *** [and] neither the fourteenth amendment nor any provision of the Illinois constitution forbids legislative classifications reasonably calculated to promote or serve a proper police-power purpose. 'Rather, they invalidate only enactments that are arbitrary, unreasonable and unrelated to the public purpose sought to be attained, or those which, although reasonably designed to promote the public interest, effect classifications which have no reason-

able basis and are therefore arbitrary.' " *(Tometz v. Board of Education (1968), 39 Ill.2d 593, 600.)* Furthermore, "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality. *Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 55 L.Ed. 369, 377, 31 S.Ct. 337, 340.* 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' *Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69-70, 57 L.Ed. 730, 734, 33 S.Ct. 441, 443.* 'A statutory descrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' *McGowan v. Maryland, 366 U.S. 420, 426, 6 L.Ed.2d 393, 399, 81 S.Ct. 1101, 1105.*" *(Dandridge v. Williams (1970), 397 U.S. 471, 485, 25 L.Ed.2d 491, 501-502, 90 S.Ct. 1153, 1161.)* Nor does the equal-protection clause require a State to "choose between attacking every aspect of a problem or not attacking the problem at all." *(Dandridge, 397 U.S. at 487, 25 L.Ed.2d at 503, 90 S.Ct. at 1162.)* "The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. [Citation.] *Or the reform may take one step at a time,* addressing itself to the phase of the problem which seems most acute to the legislative mind. [Citation.] The legislature may select one phase of one field and apply a remedy there, neglecting the others." (Emphasis added.) *Williamson v. Lee Optical of Oklahoma (1955), 348 U.S. 483, 489, 99 L.Ed. 563, 573, 75 S.Ct. 461, 465.*

It must be presumed that, in enacting section 600 of the Act, the legislature was attempting to improve Illinois'

automobile insurance system so as to more equitably and efficiently meet the problems created by automobile accidents. It did so in section 600 by providing direct benefits to the insured private passenger auto owner, his family, his guests, and others operating his car with permission and to pedestrians struck by his vehicle, in the form of prompt payment of medical bills and reimbursement for lost wages and services subject to the limitations above noted. And while these increased benefits are not extended to individuals injured by other than private automobiles, the General Assembly may proceed with reform "one step at a time," so long as such action is reasonably based, and is not required to eliminate all problems simultaneously; and, in my opinion, the decision to begin as it did cannot be said to be totally arbitrary. In terms of accidents, the private passenger automobile is the major part of the problem. In 1970 vehicle registration figures showed there to be 4,538,653 passenger cars in Illinois with only 9,978 taxis and livery vehicles and approximately 17,000 buses. Furthermore, in 1970 the Illinois Department of Public Works and Buildings statistics indicate that 78.7% of the motor vehicles involved in fatal accidents were passenger cars and the United States Government Department of Transportation statistics compiled for its automobile insurance and compensation study show that 97.6% of all persons injured in Illinois in motor vehicle accidents were either occupants of a private passenger vehicle or, if they were nonoccupants, they were injured by a private passenger vehicle. (Defs. Ex. No. 9.) Similarly, in terms of the need for a reformed insurance system, the private passenger automobile owners are a distinct group *vis-a-vis* commercial vehicle owners, and, as to the latter, compulsory liability insurance requirements not applicable to private passenger vehicles now exist. While those requirements do not include the first-party benefits required by section 600, the fact that the operators of commercial vehicles are more frequently

covered by workmen's compensation or other employer-financed protection plans may well have been a factor in the General Assembly's decision to exclude commercial vehicles from the section 600 benefits. Too, with the very substantial increases in automobile insurance costs and with the increase in the number of cars per family, the auto insurance premium has become a greater part of the family budget, and, unlike owners of commercial vehicles, the individual automobile owner is unable to pass this cost to others. Also, despite the increasing insurance costs, no first-party benefits were heretofore payable, even to the insured car owner, unless he had purchased specific coverage therefor. Ultimately, the individual, facing costs beyond his ability to pay, may either drive without insurance, or obtain insufficient coverage, to the potential detriment of future accident victims and possibly at the expense of society as a whole. Given these facts, we find that the legislature in limiting the scope of section 600 was acting within the limits of its discretion and not in a totally arbitrary or unreasonable manner, for, viewing the problem to be remedied, as the General Assembly apparently did, to consist of the failure of the present tort liability system, together with automobile liability insurance, to promptly and adequately compensate the auto accident victim, the legislature chose to adopt section 600 requiring automobile liability insurance policies to provide benefits to the insured, his family, guests and permittees, and to pedestrian victims, without regard to fault. That the uninsured accident victim or the individual injured by an uninsured motorist is not thereby afforded similar relief does not affect the validity of the legislation for, as earlier noted, legislative "reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." *(Williamson v. Lee Optical of Oklahoma (1955), 348 U.S. 483, 489, 99 L.Ed. 563, 573, 75 S.Ct. 461, 465;* see, also, *Chicago Real Estate Board v. City of Chicago (1967), 36 Ill.2d 530; Tometz v.*

*Board of Education (1968), 39 Ill.2d 593.)* To have simultaneously provided similar benefits for those victims remaining uninsured would have necessitated substantially greater changes in our tort liability system and in our risk-spreading mechanisms. The legislature could properly conclude that the present insurance reforms with their potential for lower premium costs would constitute an adequate beginning and result in making insurance more readily available to the presently uninsured. In my opinion that decision was for the legislature and was within its permissible discretion in classifying the objects of its legislation. *(People v. Saltis (1927), 328 Ill. 494.)* It is sufficient that the classifications created by section 600 are based upon some real and substantial difference in kind, situation, or circumstances which bear a rational relation to the evil to be remedied and the purpose to be attained by the statute. *Grasse v. Dealer's Transport Co. (1952), 412 Ill. 179.*

Nor do I agree with plaintiff's argument that section 600(e)(Ill.Rev.Stat. 1971, ch. 73, par. 1065.150(e)) violates the equal-protection clauses of both the Illinois and United States constitutions (Ill. Const. of 1970, art. I, sec. 2; U.S. Const., amend. XIV). That section provides: "(e) The benefits set forth in this Section must be paid regardless of collateral sources, including but not limited to the existence of any wage continuation benefits except: (1) Such benefits do not apply to any direct or indirect loss or interest of, or for services or benefits provided or furnished by, the United States of America or any of its agencies coincident to a contract of employment or of military enlistment, duty or service. (2) Such benefits must be reduced or eliminated if the injured person is entitled to benefits under any workmen's compensation act of any state or the Federal Government." Though the Act allows payment of section 600(a) benefits irrespective of the availability of compensation from private collateral sources, such as individual or group accident and health

insurance policies, while requiring the benefits to be reduced or eliminated to the extent that compensation is available under a State or Federal workmen's compensation program (600 (e)(2)), the distinction is, in my judgment, neither unreasonable nor arbitrary. Individual or group health and accident insurance is purchased by the insured pursuant to a voluntary contractual arrangement. It can be adjusted by the purchaser to eliminate duplicate coverages, or, if the insured desires and is able to find a willing insurer, he can acquire such duplicate coverage. Workmen's compensation benefits, however, are provided by law without cost to the beneficiary, and it cannot be said that the legislature was totally unreasonable in deciding that it was unnecessary to provide accident victims with free duplicate compensation by force of law. Accordingly, the choice to make section 600 benefits available only to the extent that benefits were not available under a workmen's compensation system is not, it seems to me, constitutionally impermissible. See *Richardson v. Belcher (1971), 404 U.S. 78, 30 L.Ed.2d 231, 92 S.Ct. 254.*

Plaintiff similarly argues that the exclusions of section 600(e)(1) constitute an unreasonable discrimination against the Federal employee and military serviceman in that they are excluded from first-party benefits. Defendants reply that such individuals are not excluded at all. While I agree that the extent of the exclusion, if any, of such individuals from the first-party benefits accomplished by that section is not entirely clear, it is not necessary to make that determination at this time for, even if the plaintiff's argument is correct, that provision is such an inconsequential portion of the whole Act that its invalidity would not affect the remainder.

Plaintiff further argues that section 600 violates the due-process and equal-protection clauses of both Federal and State constitutions in that it denies the private passenger automobile owners the freedom or liberty of

choosing for themselves the type of insurance protection best suited to their needs. But, as earlier indicated, the classification of private passenger automobiles separately from other vehicles has a reasonable basis and is not constitutionally impermissible. Nor do I find plaintiff's due-process argument based on our decision in *People v. Fries (1969), 42 Ill.2d 446,* compelling. In *Fries,* this court found that the statute requiring every motorcyclist to wear protective headgear was beyond the police power of the legislature in that the legislation was directed toward protecting the interests of the individual rather than the interests of the public. Here the legislature manifestly is concerned with the possible burden on society of inadequate or nonexistent compensation for the economic loss suffered by the auto accident victim, particularly when viewed in the context of the large numbers of individuals and total financial loss involved. Furthermore, the legislature was concerned with the congestive impact of the very substantial volume of minor auto accident cases on our court system, a matter of vital public concern. By requiring auto liability policies to include first-party benefits, the General Assembly may well have eliminated the former necessity of resorting to litigation in many such cases. (See *Pinnick v. Cleary (Mass. 1971), 271 N.E.2d 592.)* This legislation, being reasonably directed toward problems that affect the public welfare, which includes the economic welfare of the State and its citizens *(Sherman-Reynolds, Inc. v. Mahin (1970), 47 Ill.2d 323),* may accordingly be viewed as a proper exercise of the police power. *(Chicago Real Estate Board v. City of Chicago (1967), 36 Ill.2d 530; Clarke v. Storchak (1943), 384 Ill. 564.)* The Massachusetts Supreme Court, responding to the same due-process argument in *Pinnick* respecting that State's no-fault automobile insurance law stated: "Any doubts as to the power of the Legislature to require the citizen, for the good of the public as a whole, to take measures for his own benefit have long since been

settled \*\*\*." *Pinnick v. Cleary (Mass. 1971), 271 N.E.2d 592, 607.*

While what I have said earlier in discussing the special legislation argument is relevant to plaintiff's contention that section 608 is unconstitutional and violative of sections 2 and 12 of article I of the Illinois constitution of 1970 and the fourteenth amendment to the United States constitution, some further observations may be appropriate here. Plaintiff urges that the limitation on recovery of general damages therein provided applies to all motor vehicle accident victims who were not permanently disabled or disfigured, thereby depriving them of their common-law right to general damages without regard to their eligibility for the first-party benefits provided by section 600; stated differently, the argument is that such limitation upon recovery, if sustainable at all, can be upheld only if the same first-party benefits are available to all whose recoveries are thus limited.

The legislative authority rests in the police power under which it may act regarding any problem or evil which affects the public health, safety, morals or general welfare. *(Trust Company of Chicago v. City of Chicago (1951), 408 Ill. 91; People v. Rosehill Cemetery Co. (1929), 334 Ill. 555.)* In determining whether section 608 is a proper exercise of that power it must be recognized, as previously indicated, that the legislature has a broad discretion in the exercise of this power, and is not circumscribed by precedents arising out of past conditions; that discretion must necessarily be elastic and capable of expansion in order to keep pace with human progress. *(Grasse v. Dealer's Transport Co. (1952), 412 Ill. 179, 193.)* "The only limitation upon the legislature in the exercise of its police power is that the act must reasonably tend to correct some evil or promote some interest of the State and not violate any positive mandate of the constitution." *(Clarke v. Storchak (1943), 384 Ill. 564, 579.)* Viewed in this light, I believe section 608 is

reasonably related to the achievement of legitimate public purpose. Previously noted were some of the alleged deficiencies of the present tort law-liability insurance system which the General Assembly has here sought to remedy by providing prompt and certain payment for out-of-pocket expenses of the injured party by his own insurer. Without the section 608 limitation upon recovery of general damages for pain and suffering, mental anguish and inconvenience, that type of remedy would be impractical due to its necessarily resulting higher costs. Because of the greater number of individuals eligible for first-party benefits regardless of fault, the General Assembly apparently believed it necessary to limit the payment of general damages in order to avoid the otherwise inevitable increases in already burdensome insurance premiums. And because general damages are based upon the value of pain and suffering, and inconvenience resulting from the injury, factors which are nearly impossible to accurately measure because of their subjective nature, it was, in my judgment, within the legislative discretion to determine that the payment of the actual economic loss suffered by a greater number of persons should take priority. Furthermore, by thus limiting the recovery of general damages the legislature makes possible the equitable distribution of compensation payments in that minor injury claims will no longer be subject to the allegedly gross over-compensation attributable to their "nuisance" value. And again it is to be noted that section 608, together with section 600, furthers an important public interest by contributing to the proper functioning of our judicial system and alleviation of court congestion. Judged in this context, I cannot say the application of section 608 to individuals not entitled to first-party benefits violates section 13 of article IV.

Thousands of cases arising from automobile accidents are currently filed in the courts of our metropolitan areas each year, many of which involve comparatively minor injuries. Given the limited resources of the court system,

the result is delay for all persons seeking justice regardless of the nature of their claim. Significant in this respect is defendants' group exhibit 3 showing that of 91 automobile accident cases decided within the six-weeks period preceding trial of this cause, 17 had been filed six to seven years earlier, 29 five to six years earlier and 22 four to five years earlier. In approximately 50% (46) of those cases plaintiffs received an award greater than their "special damages," in 8 the award was less than the "specials" and in 37 plaintiffs received nothing. Defendants' exhibit 5, incorporating Illinois figures from the DOT study, indicates that of 1499 closed personal injury claims in the category affected by the section 608 limitations upon recovery (no death or permanent injury), the amounts of medical expenses and average general damages were as follows:

| AMOUNT OF MEDICAL | NO. OF CASES | AVERAGE GENERAL DAMAGES |
|---|---|---|
| Less than $100 | 730 | $ 183.80 |
| $100 - 300 | 579 | 679.80 |
| $300 - 500 | 77 | 1,335.60 |
| $500 - 1,000 | 67 | 2,036.00 |
| $1,000 - 2,000 | 38 | 2,819.30 |
| Over $2,000 | 8 | 4,577.40 |
| | 1,499 | |

In 1971, the average elapsed time between filing and the date of verdict in Cook County circuit court law jury cases was 58.1 months. This inordinate delay has been a matter of serious concern to the members of the bench and bar of this State, and has prompted numerous proposals designed to promote a more expeditious disposition of litigation in that county. By limiting the amount of general damages recoverable the General Assembly has helped to eliminate the issue which for the most part hinders settlement and hereby precipitates litigation.

The fact that section 608 changes the common-law remedy relating to the recovery of general damages does not render the legislature's action an impermissible exercise of the police power. Although due process prohibits a legislature from depriving a citizen of his vested rights, it is well settled that at least prior to the time his cause of action arises, "no person has any vested right in any rule of law entitling him to insist that it remain unchanged for his benefit." *Grasse v. Dealer's Transport Co. (1952), 412 Ill. 179, 190; accord, Smith v. Hill (1958), 12 Ill.2d 588.*

Neither does the limitation on general damages recoverable violate section 12 of article I of the 1970 Illinois constitution which provides: "Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation. He shall obtain justice by law, freely, completely, and promptly." This court, speaking of section 19 of article II, the comparable provision of the 1870 constitution, has stated that while that section provided "a broad field for the protection of persons in their property and reputation, *** this does not give a vested right not subject to change by legislative power, provided the change is reasonably necessary to promote the general welfare of the people and does not destroy a remedy." *(Clarke v. Storchak (1943), 384 Ill. 564, 576.)* As indicated above the goals sought to be achieved by section 608 are in the public interest, the means used cannot be said to be completely arbitrary or unreasonable and the section does not destroy a cause of action but merely limits the amount of general damages recoverable therein, action which the constitution does not proscribe. *(Smith v. Hill (1958), 12 Ill.2d 588; Siegall v. Solomon (1960), 19 Ill.2d 145.)* The observation made in upholding the Illinois guest statute, which required a showing of wilful and wanton misconduct for recovery, is relevant here: "*** the guest statute does not preclude a cause of action to the injured party but changes the degree of fault necessary for a recovery

from that of the common law." *(Delany v. Badame (1971), 49 Ill.2d 168, 174.)* Similarly, this court has sustained the Workmen's Compensation Act even though the employee was required to give up certain recoverable elements of damage of a common-law negligence action for, "This court has never considered one to have such a vested right in the common-law rules governing negligence actions as to preclude the legislature from substituting a statutory remedy of this type for the common-law remedy." *Moushon v. National Garages, Inc. (1956), 9 Ill.2d 407, 412.*

Nor does the fact that the limitations of section 608 apply to persons injured in motor vehicles and not to all personal injuries create invidious discrimination. It is enough, having previously discussed the legislative purposes, to state that the legislative decision was not palpably arbitrary nor unrelated to the goals of the General Assembly. See *Delany v. Badame (1971), 49 Ill.2d 168.*

Plaintiff also argues that because of the fluctuation in charges for medical and hospital services, depending on the victim's personal wealth or geographical location, use of the value of such services as the basis for the formula determining the general damages recoverable is arbitrary, unreasonable and discriminates against the poor.

I believe the language of this court in an earlier case is relevant here: "The constitutional guaranty of equal protection of the laws is interposed against discriminations that are purely arbitrary.*** It merely requires that the classification shall be based on a real and substantial difference having a rational relation to the subject of the particular legislation. *** Where a classification is reasonable and the statute is uniform in its operation on all members of the class to which it applies, there is no violation of the constitutional guaranty of equal protection of law." *(Latham v. Board of Education (1964), 31 Ill.2d 178, 185.)* Here the legislature, having reasonably

determined, because of the factors earlier indicated, that it was necessary to limit the amount of general damages, then had to set a standard for use in all cases. I believe the choice it made cannot be said to be irrational and purely arbitrary, for there are substantial problems involved in attempting to place a dollar value upon such subjective injuries as pain and suffering, mental anguish and personal inconvenience. Neither can there be ignored the relationship between the amount of special damages and of general damages that exists in personal injury litigation.

While it is apparent that this statute does not provide exact equality in that the potential amount of recovery of general damages is governed by the reasonable value of the medical treatment, and the evidence establishes substantial variations in charges for hospitalization and similar medical treatment as between different geographical locations and persons of differing incomes, in view of the overall legislative scheme, the complexities of the problems and the General Assembly's purposes, I cannot say that the resultant disparities are constitutionally impermissible. The earlier quoted statements are again relevant: "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' *Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 55 L.Ed. 369, 377, 31 S.Ct. 337, 340.* 'The problems of government are practical ones and may justify, if they do not require, rough accommodations— illogical, it may be, and unscientific.' *Metropolis Theater Co. v. City of Chicago, 228 U.S. 61, 69-70, 57 L.Ed. 730, 734, 33 S.Ct. 441, 443.* 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' *McGowan v. Maryland, 366 U.S. 420, 426, 6 L.Ed.2d 393, 399, 81 S.Ct. 1101, 1105.*"

*(Dandridge v. Williams (1970), 397 U.S. 471, 485, 25 L.Ed.2d 491, 501-502, 90 S.Ct. 1153, 1161.)* In *Metropolis Theater Co. v. City of Chicago (1913), 228 U.S. 61, 69-70, 57 L.Ed. 730, 734, 33 S.Ct. 441, 443,* the court stated that "[t]o be able to find fault with a law is not to demonstrate its invalidity. It may seem unjust and oppressive, yet be free from judicial interference. The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific. But even such criticism should not be hastily expressed. What is best is not always discernible; the wisdom of any choice may be disputed or condemned. Mere errors of government are not subject to our judicial review. It is only its palpably arbitrary exercises which can be declared void under the Fourteenth amendment; and such judgment cannot be pronounced of the ordinance in controversy." The instant statute is such a necessary "rough accommodation." There is in fact no true economic value for pain and suffering, and it is only by measuring it in terms of that which can be translated into dollars and cents that an approximation of value can be obtained. It is in this context that the legislature chose the "reasonable and necessary value of services rendered for medical, surgical, x-ray, dental, prosthetic, ambulance, hospital, professional nursing and funeral services" (Ill.Rev.Stat. 1971, ch. 73, par. 1065.158(b)) as the standard of measurement for special damages, and it is in this context that I believe such a choice is not a totally arbitrary one.

It is also urged that the limitation on general damages in section 608 deprives motor vehicle accident victims of the right to trial by jury as guaranteed by the Illinois constitution in that it was recognized practice for the jury to assess damages at the time of adoption of our 1970 constitution and therefore this practice was incorporated into the guarantee. Section 13 of article I of the 1970 constitution reads as follows: "The right of trial by jury as heretofore enjoyed shall remain inviolate." Similar pro-

visions have existed in the 1818, 1848 and 1870 constitutions, and in *George v. People (1897), 167 Ill. 447, 455,* this court stated: "We do not think there is any substantial difference between the provisions incorporated in the three constitutions. The right of trial by jury was the same under one constitution as under the other. The right protected by each constitution was the right of trial by jury as it existed at common law." Similarly, this court has held that the substantive right guaranteed by these successive constitutional provisions was not affected by interim statutes or practices; that the words "heretofore enjoyed" of later constitutional provisions intended no such change; and that for the true meaning of the guarantee it was necessary to examine the English common law. *(People v. Bruner (1931), 343 Ill. 146.)* The language of this court in *Reese v. Laymon (1954), 2 Ill.2d 614, 618,* suggesting a contrary opinion is not dispositive, as both *George* and *Bruner* were cited as authority for the statement and, in the context of that decision, it was *dicta.* Given the nature of the guarantee, the limitation on the assessment of general damages does not, in my opinion, violate the right to a jury trial, for in this regard our court has stated that: "At common law an assessment of damages is an inquest of office, usually performed by the sheriff upon a writ of inquiry of damages, or might be assessed by the court. It has been distinctly held that assessment of damages is not a trial, and does not come within the provisions of the constitution." *(O'Brien v. Brown (1949), 403 Ill. 183, 193.)* Similarly in examining the question of whether the assessment of damages is not to be considered an exclusive function of the jury it has been noted that: "At common law the assessment of damages in a default, in tort and in contract, was not considered a function of the jury and stood upon a different footing from the trial of issues of fact. The measuring of damages by a jury, therefore, would seem to be a matter of practice rather than of right. If this be so,

and the general trend of opinion seems so to indicate, then there is no violation of the constitutional guarantee of the right to trial by jury in the limitation of the amount of damages." *Pierre v. Eastern Air Lines, Inc. (N.D. Ill. 1957), 152 F.Supp. 486, 488-489.*

Nor can I agree with plaintiff that article XXXV of the Insurance Code embraces more than one subject, or that section 608 is void as embracing subjects not expressed in the title of the Act in violation of section 8 of article IV of the 1970 constitution and section 13 of article IV of the 1870 constitution, respectively. Section 13 of article IV of the 1870 constitution provides: "No Act hereafter passed shall embrace more than one subject, and that shall be expressed in the title." Section 8 of article IV of the 1970 constitution retains only the first of these requirements.

Speaking of the earlier provision this court has stated: "We have been liberal in our construction of this mandate of the constitution and have held that in order to render a provision of a statute void because its subject is not embraced in its title, the provision must be one which is incongruous or which has no proper connection with the title of the act. *(People ex rel. Ryan v. Sempek, 12 Ill.2d 581, 586; People ex rel. Coutrakon v. Lohr, 9 Ill.2d 539, 549; Pickus v. Board of Education, 9 Ill.2d 599, 612.)* 'Therefore, the constitution is obeyed if all the provisions of the act relate to one subject indicated in the title and are parts of it, or incident to it, or reasonably connected with it, or in some reasonable sense auxiliary to the object in view.' *(People ex rel. Brenza v. Gebbie, 5 Ill.2d 565, 587.)* If the title of the act amended is set forth in the title of the amendatory act, any provision which might have been inserted in the original act may be incorporated in the amendatory act as within its title." *Jordan v. Metropolitan Sanitary Dist. (1958), 15 Ill.2d 369, 374.*

The title of the Act is as follows: "An Act to add

Article XXXV to the 'Illinois Insurance Code', approved June 29, 1937, as amended, and to repeal Section 143a of said Code." And it is clear that its object was to provide what the General Assembly considered to be a more equitable and efficient system of automobile liability insurance compensation of automobile accident victims. And in my view section 608, which limits the general damages receivable in automobile personal injury claims, is but a part of and reasonably connected to this subject, for without section 608 the new first-party insurance benefits provided by this Act would not have been economically feasible.

I likewise believe that section 608 does not violate the requirement that the Act embrace only one subject: "The term 'subject' is comprehensive in its scope, and an act may include all matters germane to its general subject, including the means necessary or appropriate to the accomplishment of the legislative purpose. *(People ex rel. Brenza v. Gebbie, 5 Ill.2d 565; People ex rel. Gutknecht v. City of Chicago, 414 Ill. 600.)* The constitutional requirement seeks to prohibit only the inclusion of discordant provisions which by no fair intendment can be considered as having any legitimate relation to each other. *(People ex rel. Brenza v. Gebbie, 5 Ill.2d 565, 587; People ex rel. City of Chicago v. Board of County Comrs., 355 Ill. 244, 247.)" (Jordan v. Metropolitan Sanitary District (1958), 15 Ill.2d 369, 375.)* Section 608, in my judgment, relates to and is appropriate in the establishment of a reformed system of compensation for automobile accident victims.

While the court holds section 609 (arbitration of claims under $3,000) unconstitutional for a variety of reasons, it does not, because of its conclusion that nonseverable section 608 is invalid, consider the severability of section 609. I do not agree that the arbitration procedures provided by 609 violate the constitutional guarantee of a jury trial, for such a trial is available to one

dissatisfied with the arbitration results. (See *Application of Smith, 381 Pa. 223, 112 A.2d 625, appeal dismissed sub nom. Smith v. Wissler, 350 U.S. 858, 100 L.Ed. 762, 76 S.Ct. 105.*) Nor do I agree that the hybrid procedure described by section 609 as an "appeal" is the type of trial *de novo* intended to be eliminated by the Judicial Article of 1962. The "trial *de novo*" at which that amendment was aimed was the appeal from justice of the peace or police magistrate courts wherein jury trials were available to the county or circuit courts wherein a second jury trial was available in the trial *de novo.* As to the justice of the peace and police magistrate courts, Professor Cohn stated: "[T]heir principal deficiency, aside from the generally low level of competence of their judges, most of whom were not lawyers, was the fact that they were not courts of record. Their decisions were re-triable de novo either in the county or circuit court at the instance of the losing party who frequently failed, quite deliberately, to defend in the justice or magistrate courts. ***The system of re-trials de novo from judgments of justice and magistrate courts was expensive, frustrating, and wasteful of judicial time and manpower." (G. Braden and R. Cohn, The Illinois Constitution: An Annotated and Comparative Analysis (1969), 330-31.) It was those undesirable aspects of the retrial *de novo,* as well as other weaknesses not pertinent here, that the Judicial Article sought to eliminate by establishing the circuit court as the single trial court. By contrast those problems do not exist in the procedures established by section 609. Arbitration will conserve judicial time and manpower by helping to eliminate a major source of court congestion, thereby reducing the delay in obtaining justice. In my judgment this type of trial *de novo* was not barred by either the 1962 Judicial Article or the 1970 constitution. I differ, too, from the court's view that section 609 violates the prohibition in the Judicial Article of 1962 and section 14 of article VI of the constitution of 1970 against

"fee officers" in the judicial system. Section 609 says nothing about "fees" or any other type of compensation for the individuals acting as arbitrators, and it is not, in my opinion, a necessary conclusion, as the majority appear to believe, that the arbitrators will be compensated by "fees" collected from the parties. If it should subsequently develop that sufficient numbers of arbitrators are unwilling to serve without compensation, the General Assembly may well provide some method of payment other than "fees." Finallly if, as the majority seem to imply, the provisions of 609 do interfere with our rule-making powers, we still must determine whether 609 is severable from the balance of the Act, for, if it is, the other provisions may stand. And I am not at all sure that it can fairly be said that article XXXV would not have been passed without the arbitration provisions of section 609. See, *e.g., Vissering Mercantile Co. v. Annunzio, 1 Ill.2d 108.*

I should, perhaps, make clear the fact that I do not consider this "no-fault" insurance plan a panacea for all the problems manifest in the present system. Nor do I consider it to be the most desirable of the several plans from time to time proposed. I would uphold it simply because its essential provisions do not, in my opinion, exceed the bounds of constitutionally permissible legislative discretion.

MR. JUSTICE DAVIS, dissenting in part and concurring in part:

I join in the dissenting opinion of Chief Justice Underwood, except that part thereof which expresses the view that section 609 of the Act is constitutional. On that issue, I concur with the opinion of the majority.